FRANK v. HICKS, TRUSTEE, ETC., HICKS, TRUSTEE, ETC., v. FRANK. HICKS, TRUSTEE, ETC., v. BADGETTE.

MORTGAGE—EXECUTION OF BY CORPORATION—EQUITABLE—RECORD-ING — AFTER ACQUIRED PROPERTY — JUDGMENT CREDITORS— WATER RIGHTS.

1. The execution of a trust deed of a corporation is defective, which is signed by the president and secretary, but acknowledged by the president alone; and there being no subscribing witness.

2. Such an instrument is not entitled to record, and, although recorded, the record is not constructive notice of its contents.

3. As between the parties it constitutes an equitable mortgage, and has precedence over judgment and execution liens accruing subsequent to the execution of the deed.

4. An express statement in the trust deed, following a description of the property conveyed, to the effect that it conveys "also all property of like kind and character to that hereinbefore described which shall hereafter be acquired," the deed covering both real and personal property, is sufficient to bring under the deed real estate subsequently acquired; the intention being shown by the deed and the bonds secured thereby to convey the entire property of the company.

5. Although but an equitable mortgage, it will take precedence over subsequent judgment and execution liens, as to such after acquired property.

6. A ratification of the deed by the company by long acquiescence and acceptance of the resulting benefits, will pre-

clude the right to question the authority of the officers to execute it to take effect on after acquired property.

7.  A water right acquired for irrigation of lands, and the ditch or other conduit for the water, passes by a conveyance of the realty without being specifically mentioned.

8.  Whoever grants a thing, grants, by implication, that which is necessary to the beneficial use and enjoyment of the thing granted.

9.  A right to the use of water for irrigation purposes together with the ditch or other conduit, may, however, be conveyed separate from the land upon which the water is used.

[Commenced in District Court August 15, 1891—Decided January 16, 1894—Rehearing denied March 14, 1894.]

ERROR to District Court for Laramie County, HON. RICHARD H. SCOTT, Judge.

This was a suit brought by Truman B. Hicks, as trustee for the benefit of the bondholders of the Cheyenne Land and Live Stock Company, for the foreclosure of a certain deed of trust, executed by the said company to said Hicks and William W. Corlett, since deceased, to secure the payment of certain bonds of said corporation. The deed was executed on the 22nd day of October A. D. 1886, and recorded October 25th, 1886. Elise Frank, on June 27th, 1889, obtained judgment against the corporation, and on July 3rd, 1891, levied execution thereunder on all the lands upon which the deed is attempted to be foreclosed, and began advertising said property for sale. Thereupon this suit was brought praying among other things for an injunction restraining Elise Frank from selling the said property, upon which a temporary injunction was granted.

After the bringing of this suit Charles A. Badgette obtained judgment against the company, and thereupon levied execution upon the water right and ditches that had theretofore been used with the lands of the said corporation, as to which this suit was brought, and advertised the same for sale under said execution.

And thereupon a supplemental petition was filed, asking that defendant, Charles A. Badgette, be restrained from selling the property levied upon by him. Upon which a temporary injunction issued against said defendant, Badgette.

On the trial the court below found that the trust deed which it was sought to foreclose was not executed in accordance with the laws of Wyoming and was not a legal mortgage; but that it constituted an equitable mortgage, which as against Elise Frank, was a superior lien upon the lands specifically described in the deed.

The court further found that the lien of the trust deed upon lands acquired after the execution of the deed was inferior and subject to the judgment and execution lien of Elise Frank, upon such lands, and was inferior and subject to the judgment and execution levy of Charles Badgette, upon the water rights and ditches levied upon by him.

Elise Frank, and Truman B. Hicks, as Trustee, etc., each prosecuted error. The other material facts are stated in the opinion, and in briefs of counsel.

*Potter & Burke,* for Elise Frank.

The defective execution of the trust deed prevented any interest in presenti being created. (Secs. 1, 8, 24 Rev. Stat., 1887.) The attesting of a conveyance by witnesses constitutes a part of the execution. (Crane v. Reeder, 21 Mich., 24; Galpin v. Abbott, 6 Mich., 17-43; Tarpey v. Salt Co., 5 Utah, 205; Thompson v. Morgan, 6 Minn., 292; Gardner v. McClure, id., 250; Prout v. Shaubert, 5 Minn., 323.) An acknowledgment is an essential feature of the execution. A specific lien had been acquired by levy of execution. Equity will not declare a lien in presenti to be created by a defectively executed deed as against such a specific lien. (Pierce v. Cutts, 29 Ga., 142; Recouillat v. Sausevain, 32 Cal., 376; Main v. Alexander, 9 Ark., 112; Bloomfield v. Humason, 11 Or., 229; White v. Denman, 16 O., 60; Building Asso'n v. Clark, 43 O. St., 427.) Under a statute like that of Wyoming, equity will not prefer the lien of a defective deed to a subsequent judgment lien, whether the creditor is with or without no-

tice. (Van Thornilly v. Peters, 26 O. St., 474; Thompson v. Morgan, 6 Minn., 292; Tarpey v. Salt Co., supra; White v. Denman, supra; Bloom v. Noggle, 4 O. St., 45; Hawkins v. Files, 51 Ark., 417; Dodd v. Parker, 40 Ark., 536; Swigart v. Bank, 17 B. Mon., 268; Building Asso. v. Clark, supra.) A court of equity cannot put vitality into an instrument having none in itself. (Lindley v. Smith, 58 Ill., 250; Murphy v. Williamson, 85 Ill., 150; Tulley v. Davis, 30 Ill., 103; Adams v. Bishop, 19 Ill., 395; Montag v. Linn, 19 Ill., 399; Emeric v. Alvarado, 90 Cal., 444.) Where a statute requires a mortgage to be recorded in a certain time to be valid, a judgment creditor obtaining a specific lien by levy is held to have a prior lien to a mortgage not so recorded. (Davidson v. Cowan, 1 Dev. Eq. (N. C.), 470; Cowan v. Davidson, 2 Dev. Eq., 533; Davidson v. Beard, 2 Hawks (N. C.), 520; Butler v. Maury, 10 Humph., 420; Lillard v. Ruckers, 9 Yerger, 64.) A mortgage defectively executed is not entitled to record. An unrecorded mortgage, or one defectively executed does not vest in the mortgagee any interest in the property, either legal or equitable as against subsequent purchasers, or judgment creditors of the mortgagor. As between the parties equity will give it effect. A defective mortgage, when reformed, will not affect the lien of an intervening judgment. The deed did not afford constructive notice. There is no evidence of actual notice. It was necessary that the secretary should have acknowledged the execution of the deed. (Kelley v. Calhoun, 95 U. S., 710; Merrill v. Montgomery, 25 Mich., 73, 77.) The deed was not delivered. Not being recordable, its record does not give rise to a presumption of delivery. The secretary left the deed for record and it was returned to him. The original instrument was seen in possession of the Secretary of the company in 1889 or 1890. Its execution was incomplete, and all ordinary presumptions are therefore overthrown. Although for a time in Mr. Corlett's safe, there are no circumstances shown as to how it came there, except that he drew up the document. (See Healey v. Seward, 5 Wash., 319.) There were no equities established. The proof fails to disclose that any money was ever received by the company for the bonds

issued. There is no proof either, except as to one bond, that the bonds were actually issued. The deed was uncertain as to description.

*Baird & Churchill,* for Hicks, Trustee.

The deed was delivered.

Record is prima facie evidence of delivery, and is conclusive so far as the grantor is concerned. Devlin on Deeds, Sec. 292; Robinson v. Gold, 26 Ia., 89; Lawrence v. Farley, 24 Hun., 293; Bensley v. Atwell, 12 Cal., 231; Kille v. Ege, 79 Pa. St., 15; Warren v. Jacksonville, 15 Ill., 236; Bullitt v. Taylor, 34 Miss., 708; Burke v. Adams, 80 Mo., 504.

The signing and acknowledging of an instrument by grantor admits the delivery. Rigler v. Cloud, 14 Pa. St., 361.

Assent by the grantees completes the case as to delivery. Parmalee v. Simpson, 5 Wall., 81-86; Boady v. Davis, 20 N. H., 140; Snider v. Lackenour, 2 Ired. Eq., 360; Hedge v. Drew, 12 Pick., 416.

The possession of a deed by the grantee is presumptive evidence of delivery to him, as grantee and not as attorney. Devlin on Deeds, Sec. 294; Roberts v. Swearington, 8 Neb., 363; Chandler v. Temple, 4 Cush., 285; Brittain v. Work, 13 Neb., 347; Newlin v. Beard, 6 W. Va., 110; Kidder v. Stevens, 60 Cal., 414; Cutts v. York Co., 18 Me., 190; Canning v. Pinkham, 1 N. H., 353; Carnes v. Platt, 41 N. Y. Sup. Ct., 435; Green v. Yarnall, 6 Mo., 326; Reed v. Doutit, 62 Ill., 384; Tuttle v. Turner, 28 Tex., 759; Houston v. Stanton, 11 Ala., 412; Boody v. Davis, 20 N. H., 140; Tunison v. Chamblin, 88 Ill., 379-381.

The offer of the original deed by the attorney for the grantee at the trial is of itself sufficient evidence to establish the presumptive delivery of the deed, and acceptance by the grantee. (Branson v. Cauthers, 49 Cala., 374.)

The trust deed contained a sufficient description of the lands to effect a conveyance. (Quinn v. Champagne, 38 Minn., 322.)

Courts will take judicial notice of government surveys and

political subdivisions. (Hurley v. Brown, 98 Mass., 545; Scanlan v. Geddes, 112 Mass., 15; Atwater v. Schenck, 9 Wis., 160; Russell v. Sweezey, 22 Mich., 235; Beal v. Blair, 33 Iowa, 318; Butler v. Davis, 5 Neb., 521; Harding v. Strong, 42 Ill., 148; Clark v. Powers, 45 Ill., 283; Romans v. Langevin, 34 Minn., 312.)

Sufficient equities were established to warrant foreclosure of the trust deed. The bonds were payable to bearer and negotiable. (Stanton v. Ala. & C. R. Co., 2 Woods, 527; Com'rs v. Aspinwall, 21 How., 539; Woods v. Lawrence, 1 Black, 386; Mayer v. Muscatine, 1 Wall., 384; Murray v. Lardner, 2 Wall., 110; Morawetz Private Corp., Sec. 341; White v. Vermont, Etc., R. R. Co., 21 How., 575; Moran v. Miami Co., 2 Black, 722; Mercer Co. v. Hackett, 1 Wall., 95; Clark v. Iowa City, 20 Wall., 583; Brainard v. R. R. Co., 25 N. Y., 496; Haven v. Grand Junction, etc., Co., 109 Mass., 88; Miller v. R. R. Co., 40 Vt., 399; Mason v. Frick, 105 Pa. St., 162; Phila., etc., R. R. Co. v. Smith, 105 Pa. St., 195.)

And when the bonds of a corporation have come into the hands of a bona fide purchaser, even though wrongfully issued, the purchaser may enforce their payment to the same extent as the purchaser of any other negotiable instrument before maturity. (Beach Private Corp., Sec. 664; Hackensack W. Co. v. DeKay, 36 N. J. Eq., 37, 548; Pierce v. Madison, 21 How., 442; Grand Rapids, etc., Co. v. Sanders, 17 How., 552.)

The bondholders of the Cheyenne Land & Live Stock Company, for the purposes of this suit, are not necessary parties. (Beach v. Private Corp., Sec. 765; Vose v. Bronson, 6 Wall., 452; Shaw v. Little Rock, etc., R. R. Co., 100 U. S., 605; Chicago, etc., R. R. Co. v. Howard, 7 Wall, 392; Credit Co. v. Ark. Cent. R. R. Co., 5 McCrary, 30-31.)

Nor is it necessary that all the bonds be offered in evidence on the trial on foreclosure. (Hackensack Water Co. v. De-Kay, 36 N. J. Eq., 548.)

The trust deed is for the benefit of all the bondholders, who, though not parties to the suit, may come in and prove their claims equally with the bondholders who are complainants. (Water Co. v. DeKay, supra.)

The trust deed in evidence constituted an equitable lien on the lands described in it.

Beach Eq. Jur., Sec. 292; Payne v. Wilson, 74 N., 348; Atkinson v. Miller, 32 W. Va., 115; Poland v. R. R. Co., 52 Vt., 171; In re Strand Music Hall Co., 3 De. Gex., J. & S., 147; Chase v. Peck, 21 N. Y., 581; Racouillat v. Sausevain, 32 Cala., 376; Payne v. Wilson, 74 N. Y., 348; 1 Jones Mortgages, Sec. 168; Daggett v. Rankin, 31 Cala., 321; Flagg v. Mann, 2 Sumner, 533; Love v. S. N. B. W. & M. Co., 32 Cala., 639; Abbott v. Godfrey's Heirs, 1 Manning (Mich.), 179; McClurg v. Phillips, 57 Mo., 214; Dunn v. Riley, 58 Mo., 134; Harrington v. Fortner, id., 210; Peckham v. Haddock, 36 Ill., 39; Kloch v. Walter, 70 Ill., 416; McAdow v. Black, et al., 4 Mont., 475.

The equitable lien of the trust deed is superior to the judgment liens. (Freeman on Judg., sec. 357; Baker v. Morton, 12 Wall., 150; Walker v. Moody, 65 N. C., 599; Filley v. Duncan, 1 Neb., 134; 28 Gratt., 401; 60 Ind., 591; 49 Tex., 26; 41 Wis., 436; Finch v. Earl, etc., 1 P. Will., 277; Ells v. Tousley, 1 Paige, Ch. 280; Morris v. Mowatt, 2 id., 586; 7 Wall., 205; 72 Ind., 262; 17 W. Va., 276; 15 Ark., 73; 4 Paige Ch. 14; 2 id., 217; 92 Mo., 26; 4 Mont., 475; Freeman on Ex., sec. 195; 2 Minn., 271; Devlin on Deeds, sec. 634; 1 Pa. St., 493; 9 id., 95; 49 Mo., 247; Orth v. Jennings, 8 Blackf., 426; Mansfield v. Gregory, 8 Neb., 432; 20 Mo., 134; Bell v. Evans, 10 Ia., 353; Chapman v. Coates, 26 Ia., 291; Hoy v. Allen, 27 Ia., 208; Holden v. Garrett, 23 Kan., 98; 40 Ia., 659; Kelley v. Mills, 41 Miss., 267; Bank v. Carpenter, 7 O., 21; Taylor v. Oasso'n, 68 Ala., 230; Nat. B'k v. Lainer, 7 Hun., 623; McClurg v. Phillips, 57 Mo., 214; Chase v. Peck, 21 N. Y., 581; 25 Barb., 305.)

The fact that Mrs. Frank's attorney had seen the record of the trust deed was notice of the equities thereunder. (Mosgrove v. Bonser, 5 Or., 313; Pierce v. Red Bluff Co., 31 Cal., 161; Musick v. Barney, 49 Mo., 460; May v. Leclaire, 11 Wall., 217; Byers v. Engles, 16 Ark., 543; Polk v. Cosgrove, 4 Biss., 437; Hart v. Bank, 33 Vt., 252; McAdow v. Black, 4 Mont.,

475; Robinson v. Williams, 22 N. Y., 382; Gilbert v. Jess, 31 Wis., 111; Hastings v. Cutler, 24 N. H., 481.)

The after acquired property is covered by the mortgage. (Dunham v. Ry. Co., 1 Wall., 254; Ry. Co. v. Cowdrey, 11 Wall., 481; Pierce v. M. Ry. Co., 24 Wis., 551; Phillips v. Winslow, 18 B. Mon., 431; R. R. Co. v. Woelpper, 64 Pa. St., 366; Seymour v. Ry. Co., 25 Barb., 284; Sellen v. Lester, 48 Miss., 513; Howe v. Freeman, 14 Gray, 566; Buck v. Seymour, 46 Conn., 156.)     Equity treats a mortgage of property to be afterwards acquired as a contract binding in conscience to execute a mortgage the instant it comes into being. (Little Rock R. R. Co. v. Page, 35 Ark., 323; Brett v. Carter, 2 Lowell, 458; Pennock v. Coe, 64 U. S., 132; Benjamin v. R. R. Co., 49 Barb., 441.)     A mortgage will hold future property when so expressed therein. (Coopers v. Wolf, 15 O. St., 523; Morril v. Noyes, 56 Me., 458; Parker v. R. Co., 33 Fed., 693; R. R. Co. v. Mellaw, 79 U. S., 365; Scott v. Clinton, etc., Co., 6 Biss., 529; Shaw v. Bill, 95 U. S., 10; Luddow v. Hurd, 1 Disney, 552; Oliphant v. Eckerly, 36 Ark., 71; Bank v. Turnbull, 34 Am., 791; Rice v. Kelso, 57 Ia., 115; Barnard v. Ry. Co., 4 Cliff, 351.)     Water rights are appurtenant to the lands on which they are used. (Gould on Waters, 305, and cases cited; McDonald v. B. R. & A. Co., 13 Cal., 220; Standart v. Water Co., 19 Pac., 689; Cave v. Crafts, 53 Cal., 135; Tucker v. Jones, 8 Mont., 225; Hindman v. Rizor, 21 Or., 112; Crooker v. Benton, 93 Cal., 365; Farmer v. Water Co., 56 Cal., 11; Boone Real Prop., 306 and cases cited; Martindale Conv., p. 90; Warvelle on Vendors, 549; Eshelman v. Snyder, 82 Ind., 501.)     Improvements after acquired inure to the mortgage. (Matson v. Griffin, 78 Ill., 477; Sweetzer v. Jones, 35 Vt., 317; Moore v. Valentine, 77 N. C., 188; Burnside v. Mitchell, 43 N. H., 390; Bank v. Raymond, 29 La. Ann., 355; Sullivan v. Toole, 26, Hun., 203; Cole v. Stewart, 11 Cush., 181; Baird v. Jackson, 98 Ill., 78; Childs v. Dolan, 5 Allen, 319; Frierson v. Blanton, 1 Baxt., 280; Wright v. May, 73 Me., 297.) Equitable mortgage attaches to improvements same as if legal. (Jones Mort., 437; Williams v. Evans, 23 Beav., 239; ex parte Ast-

bury L. R., 4 Ch. App., 630; Longbottom v. Berry, L. R., 5 Q. B., 123; Ebb v. Hodge, 39 L. R. (N. S.) C. P., 56.)

*A. C. Campbell*, for defendant in error Badgette.

The water rights were capable of being alienated by the owner. They are not inseparably connected with the land; nor are they dependent upon the ditch by which the diversion of the water was originally made. The real property right is the right to use the water. The ditch is a mere means by which the right is made effective. An owner of a water appropriation is not confined in its use to the lands upon which it was originally applied. A sale of a water right must be by deed. (Smith v. O'Hara, 43 Cal., 371; Brenham v. Freeman, 11 Colo., 601.) The owner could take the water out of the ditch built to appropriate it, and off the lands. (Strickler v. Colo. Springs, 16 Colo., 61.)

*Potter & Burke*, on petition for rehearing, contended that before the trust deed could be held to operate as an equitable mortgage, it must appear that the corporation was under obligation to execute a good mortgage; that they had agreed to do so, and had actually received a consideration for such promise. That the evidence to show such an obligation was entirely lacking, and cited Borden v. Trustees, etc., 21 Atl., 40; Massop v. his creditors, 6 So., 134.

CONAWAY, JUSTICE.

On October 22, 1886, the Cheyenne Land & Live Stock Company, a corporation, made its deed purporting to convey to William W. Corlett and Truman B. Hicks "and their successors in trust forever," fifteen thousand two hundred and eighty-five and forty-nine one-hundredths acres of land, described by section, township and range, without using the word appurtenances or appurtenant or appendant, and without mentioning any water, water right, or irrigating ditch; and a large amount of personal property consisting of live stock of the bovine and horse species, and ranch implements, farm utensils, blacksmith tools, etc., all being property appropriate to the business of a land and live stock company. The

description of the property conveyed concluded with the following words: "Also all property of like kind and character to that hereinbefore described which shall hereafter be acquired by said first party, together with all the corporate privileges, liberties and franchises of said party of the first part."

This property was conveyed in trust for the equal pro rata benefit and security of certain first mortgage bonds, not exceeding the limit of one hundred and fifty thousand dollars, which said company proposed to issue, and did thereafter issue, "without any preference or priority of any one bond over another by reason of any priority of the time of issue or negotiation thereof or otherwise."

A copy of one of these bonds is in evidence and bears date of September first, 1886. It would seem that the bonds had been executed and were ready for issue at the time of the execution of the trust deed, but were not actually issued within the meaning of the deed until afterward.

The principal of said bonds becomes due and payable at the office of the Farmers Loan and Trust Company in the City of New York, on the first day of September, 1896, and interest at the rate of six per cent. per annum on the first days of March and September in each year. The trust deed provides that in case of default in the payment of the principal of any of the bonds or any interest when the same shall become due and within ninety days thereafter the entire principal sum and interest becomes due and payable forthwith, at the option of the holder or holders of any of said bonds, and the trustees may then, at the request of the holder of any of said bonds, sell the trust property and apply the proceeds to the payment of the bonds after paying the expenses of taking and keeping the property and the charges and expenses of sale, paying the surplus, if any there be, to the party of the first part in the trust deed. William W. Corlett died prior to the commencement of this action. Truman B. Hicks, as provided in the trust deed, is acting as sole trustee. The trust deed was filed for record on the twenty-fifth day of October, 1886, and was duly recorded.

The trial court finds as a matter of fact, and the evidence in the record sustains the finding, that the trustees named accepted the trust;. that the trust deed was duly delivered after its execution, and that the Cheyenne Land & Live Stock Company defaulted and failed to pay three semi-annual payments of interest upon the bonds falling due, respectively, on the first day of March, 1890, the first day of September, 1890, and the first day of March, 1891, and that Horace K. Thurber is the holder for value and in good faith of forty-four of the bonds mentioned, and that upon said defaults in said payments of interest he made a written request for the foreclosure of said trust deed in accordance with the provisions thereof, electing to declare the whole principal indebtedness due and payable; and that thereupon said Truman B. Hicks, as surviving trustee, brought this suit for the foreclosure of said trust deed; and for an injunction restraining the sale of property on execution sued out by Elise Frank. After the execution of the trust deed and before the commencement of this action in the district court, the Cheyenne Land & Live Stock Company, grantor in said trust deed, acquired considerable additional property in lands, and also received a deed stating the nominal consideration of one dollar, of the water rights and irrigating ditches in controversy between Truman B. Hicks, as trustee, and Charles A. Badgette, who seeks to sell them on his execution as the property of said company, and as not subject to the lien of said trust deed.

On June twenty-seventh, 1889, Elise Frank obtained her judgment against the Cheyenne Land & Live Stock Company in the sum of fifteen thousand and ninety-six dollars, and on July first, 1889, caused execution to issue thereon, and on July third, 1889, caused such execution to be levied upon all the lands described in the trust deed and all the lands acquired by the Cheyenne Land & Live Stock Company after the execution of the trust deed, except one hundred and twenty acres. The sheriff of the county was proceeding to advertise and sell the lands so levied upon, when, on August fifteenth, 1891, this action was begun, and a temporary order of injunction sued out, restraining such sale. On final hear-

ing the district court made this order perpetual as to the lands described in the trust deed, but dissolved the injunction as to the lands acquired by the Cheyenne Land & Live Stock Company after the execution of the trust deed.

On August twenty-fourth, 1891, Charles A. Badgette obtained his judgment against the Cheyenne Land & Live Stock Company, for the sum of one thousand and seven hundred and sixty dollars and forty cents. On August thirty-first he caused execution to issue. On September third, 1891, the sheriff of the county levied the execution upon the water rights and irrigating ditches in controversy. He was proceeding to advertise and sell them when, on September twenty-third, 1891, by supplemental petition of Truman B. Hicks as trustee, a temporary order of injunction was sued out, restraining such sale. On final hearing the district court dissolved this injunction.

The trust deed in question was defectively executed and was not entitled to record. Although recorded the record was not constructive notice to any one of its contents. It is not a legal mortgage, but is effective between the parties as an equitable mortgage.

The informality in the execution of the trust deed in question is that there is no subscribing witness as required by statute, and that the acknowledgment is by the president alone, whereas the acknowledgment of the secretary is also necessary as one of the parties authorized by the resolution of the board of trustees of the company to execute the trust deed, and as the party having custody of the corporate seal. As between the parties the following seems to be a correct and comprehensive statement of the law applicable to such cases:

"A mortgage or trust deed which cannot be enforced by a sale under the power or by a judgment of foreclosure, on account of some informality (in a matter) requisite to a complete mortgage or deed of trust, will nevertheless be regarded as an equitable mortgage, and the lien will be enforced by special proceedings in equity. The attempt to create a security in legal form upon specific property having failed, effect is given to the intention of the parties, and the lien enforced

33

as an equitable mortgage.   Any agreement between the parties in interest that shows an intention to create a lien may be, in equity, a mortgage.   As stated by Judge Story, 'If a transaction resolve itself into a security, whatever may be its form, and whatever name the parties may choose to give it, it is in equity a mortgage.   Effect has been given in this way to a deed of trust in which the name of the trustee was accidentally omitted; to one from which a seal was omitted by mistake; to one sealed in fact but not expressed to be sealed; to one imperfectly acknowledged or not acknowledged at all; or not witnessed as a deed of real estate is required to be. But it seems effect will not be given to a mortgage witnessed, acknowledged and recorded, but not signed by the mortgagor.' "   Jones, Mort., Sec. 168.

Numerous authorities are cited on behalf of the trustee to the effect that the lien of a judgment creditor attaches only to the actual interest of the morgagor, subject to all equities existing against such interest in his hands, and that this is all that can be taken and sold on execution.   Freeman states the rule thus:   "In the absence of a statutory provision giving it some greater effect, an execution lien, like that of a judgment, attaches to the real rather than to the apparent interest of the defendant.   If the title held by him is subject to equities of third persons the execution lien is also subject to such equities."

This rule has been discussed so often and so thoroughly by different courts and is so well established, that another discussion of it would not be profitable.   For a full discussion with a voluminous citation of authorities, see case of Snyder v. Martin, 17 West Va. Rep., page 226.

Some cases are cited by counsel for the judgment creditors as sustaining a different rule.   Most of these cases have arisen under statutes different from ours, and which change the rule.

In Butter v. Maury, 10 Humph. (Tenn.) Rep., 420, the lien of a judgment creditor was preferred to an unregistered title bond.   The statute provided that all instruments not registered in conformity thereto should be "null and void as to

existing or subsequent creditors or bona fide purchasers without notice."

Some Ohio cases are cited. The statute under which these decisions were made provided that mortgages should take effect from the time of their filing for record. The courts at first gave this language its literal meaning and held that mortgages took effect even as between the parties thereto only from the filing of the mortgages for record. Afterward, this view was overruled and mortgages held to take effect as to the parties without filing or recording, but not as to any one else until filed. Building Association v. Clark, 43 O. S., 427. Under such a statute a judgment lien would, of course, take precedence of an unfiled and unrecorded mortgage.

Some Arkansas cases are cited. In that state the statute provides that "Every mortgage, whether for real or personal property, shall be a lien on the mortgaged property from the time the mortgage is filed in the recorder's office for record and not before." Under this statute judgment liens have precedence of unfiled mortgages. The latter are not liens. Main v. Alexander, 9 Ark., 112; Dodd v. Parker, 40 Ark., 536; Hawkins v. Files, 51 Ark., 417.

The case of Davidson v. Beard, 2 Hawkes Law and Equity, 520, is cited. The statute of North Carolina, under which this case was decided, was that every mortgage of lands, tenements, goods or chattels, which shall be first registered, shall be taken and held to be a first mortgage, any former or other mortgage not before registered notwithstanding, unless such prior mortgage be registered within fifty days after the date. Under this statute the court considered a subsequent purchaser or a subsequent incumbrancer, including a judgment creditor, as a subsequent mortgagee, and gave preference to the lien of a judgment creditor accordingly. If the court was right in holding that a judgment creditor is to be regarded as a mortgagee this decision is right. It follows from the premise stated. But in so holding the court seems to stand alone. A judgment creditor is not to be regarded as a mortgagee, in the absence of a statutory provision to that effect.

Jones, in discussing judgment liens, states the law correctly

according to the almost uniform current of authority. He says: "The recording acts do not change the common law in this respect. They have not interposed generally to protect a judgment lien; and where they have not it stands as at common law, subject to the prior conveyance. If there be an existing mortgage at the time the judgment was rendered that will bind only the equity of redemption whether the mortgage be recorded or not, or whether the judgment creditor had or had not actual notice of the mortgage when he obtained the judgment." Jones, Mort., Sec. 460.

Again:

"An unrecorded mortgage is preferred to a judgment where the judgment creditor is not considered a purchaser within the recording acts; for a judgment lien or attachment is not protected by them; and a mortgage, being valid without being recorded, for all purposes except that of preserving its lien against bona fide purchasers or mortgagees, is valid against a judgment lien." Id., Sec. 462.

A number of cases cited in which the preferred liens were not judgment liens, are not in point.

It should not be forgotten that a secret sale or incumbrance of real estate was valid at common law, even against subsequent purchasers or incumbrancers without notice. To prevent fraud effected by such secret sales and incumbrances, registration was invented and has become common. Persons whom the recording acts protect in these matters are protected. Persons whom the recording acts do not protect are not protected. What persons are protected by our statute? It must speak for itself. "Every conveyance of real estate in this territory hereafter made, which shall not be recorded as provided by law, shall be void as against any subsequent purchaser or purchasers in good faith and for a valuable consideration of the same real estate or any portion thereof whose conveyance shall be first duly recorded." Rev. Stat. Wyo., Sec. 18.

A judgment creditor, before sale of real estate by virtue of an execution issued upon his judgment, is not and cannot be, by virtue of such judgment and execution, a subsequent pur-

chaser in good faith and for a valuable consideration of the same real estate whose conveyance shall be first duly recorded. He is not a purchaser. He has no conveyance to record.

It seems clear that the defectively executed trust deed was properly admitted in evidence, and that it is an equitable mortgage binding between the parties, and having precedence of judgment and execution liens acquired after the execution of the trust deed.

The deed of trust purports to convey to the trustees the "entire property" of the Cheyenne Land & Live Stock Company, more particularly described as lands, live stock, farm and ranching implements, etc., describing the lands by section, township and range, and giving the number of animals of the different classes, and mentioning the more important of the ranch and farming implements: "Also all property of like kind and character to that hereinbefore described which shall hereafter be acquired by said first party, together with all the corporate privileges, liberties and franchises of the said party of the first part." There is no personal property involved in the litigation. If this clause does not suffice to convey after acquired real estate, then the trustees have no claim on it, and the judgment creditors may take it. The description of the lands come first, then the description of the personal property, then the clause last quoted. It is urged that this clause refers to the immediately antecedent description of property, which is a description of the personal property; and that it therefore includes in its meaning and operation only personal property of like kind and character to that described, and does not so include real property. In support of this view it is argued on behalf of the judgment creditors that personal property is not of a like kind and character with real estate, and that consequently the language purporting to convey after acquired property cannot include both personalty and realty, but that it applies only to property of the kind and character the description of which is immediately antecedent to the language; that is, to personal property. This view is supposed to be strengthened by the consideration that our statutes authorize and provide for the

execution of a mortgage or deed of trust to take effect on after acquired personal property, but makes no such provision as to real estate; and that it is to be presumed that the parties had the statute in view and intended to follow it when the trust deed was executed.

This last consideration seems, to the writer of this opinion, to be rather specious and ingenious than convincing. It does not appear that the company in executing the deed did follow the statute. It might have made the deed in its present form in the absence of any such statute. Under the statute it might have reserved important privileges which it has not reserved. It might have inserted a power to sell and dispose of portions of the property in the course of business and to replace it with property of like kind and character. It has inserted no such provision. And such privilege is important as enabling the company to carry on the business in somewhat the usual manner and to make it profitable. The authority of a corporation to convey its property, both real and personal, by mortgage or deed of trust, to take effect on property acquired after the execution of such mortgage or deed of trust, without statutory authority, and in the absence of statutory restriction, is too well established to be questioned or to require discussion. That seems to be all that the grantor has attempted to do in the present instance. It does not appear that any statutory authority has been invoked or exercised. No statutory privilege has been claimed.

It also seems that the construction limiting the application of the words "all property of like kind and character to that hereinbefore described" to the description immediately antecedent is very narrow, and not correct. The words "hereinbefore described" naturally include descriptions in any part of the instrument preceding the words. And the property described is declared to be the entire property of the grantor, and, as stated, is all property appropriate to the business of a land and live stock company. In this respect it is all property of like kind and character.

It is, however, a question as to the intention of the com-

pany in making the trust deed in the form and language in which it appears. If the language is to be considered ambiguous, which is the most that can be claimed on behalf of the judgment creditors, we may resort to extrinsic evidence, not to contradict it or to enlarge its meaning, but to explain it and ascertain its true meaning.

The bond, which is in evidence by proven copy, is, practically, a contemporaneous instrument. Whether contemporaneous or not, it refers to the deed of trust, and may be used to explain it. The bond is really part of a single business transaction for the raising of money, of which transaction the deed of trust is another part.

On the face of the bond appears the following words:

"This bond is one of a series of first mortgage bonds issued for the purpose of raising a part of the purchase money to pay for property purchased by said company, and to pay for property which may be hereafter purchased by said company, each of the denomination of one thousand dollars, numbered from one upwards. The payment of the principal and interest of each is secured by a first mortgage or trust deed bearing date the first day of September, A. D. 1886, conveying to W. W. Corlett and T. B. Hicks, of the City of Cheyenne, County of Laramie, Territory of Wyoming, in trust for the holders of said bonds, all of the property, rights, liberties, corporate privileges and franchises now or hereafter acquired by said company, as specified in said mortgage."

Here is the company's own construction of its deed, to the effect that it covers all property acquired by the company at the time of making the deed or thereafter.

Another question is raised as to the authority of the president and secretary of the company to execute a deed of trust to take effect on property acquired after the execution of the deed. It is not necessary to encumber this record with a discussion of the question of the authority possessed by the president and secretary of the company to convey its property by deed of trust under the resolutions of the board of trustees of the company conferring their authority. It is not a question as to an act in excess of the corporate powers. A

subsequent ratification of such an act is equivalent to a precedent authority. The execution of the deed of trust in the form in which it appears, and the issue of the bonds, has been ratified by the company by long acquiescence, and by accepting and retaining the resulting benefits. The issuing of a bond containing the language above quoted is also an act ratifying the execution of the trust deed mentioned in it as securing its payment.

It was claimed in argument that there was no evidence showing that the Cheyenne Land & Live Stock Company received any of the benefits resulting from the execution of the trust deed or from the issue of the bonds. It was in evidence, and not questioned or denied by any other evidence, that the company paid interest on the bonds to the extent of five semi-annual payments. If this can be explained on any other hypothesis than that the company had received value for the bonds no such explanation was attempted, and no evidence appears upon which such explanation can be based. The conclusion seems unavoidable that the lien of the trust deed, considered as an equitable mortgage, attaches to the lands acquired by the Cheyenne Land & Live Stock Company after the execution of the trust deed, and that such lien has precedence of the judgment lien of Elise Frank.

The water rights and irrigating ditches in controversy require a separate consideration. There are eleven of them: Horse Creek Ditch Nos. 1, 2, 3, 4, 5, 7, 8 and 9, and Timberline Ditch, Latham Ditch and South Horse Creek Ditch.

No mention of water, water right or irrigating ditch is made in the deed of trust of the Cheyenne Land & Live Stock Company. This company acquired title to the lands described in its trust deed and conveyed thereby to the trustees by three several deeds of the same date with the deed of trust. Two of these deeds were executed by A. H. Swan and Hiram B. Kelley, conveying to the company five hundred and sixty acres of the land. The other deed was executed by the Horse Creek Land & Cattle Company, conveying to the Cheyenne Land & Live Stock Company the balance of the fifteen thousand two hundred and eighty-five and forty-nine one hun-

dredths acres described in the trust deed. No mention of water, water rights or irrigating ditch is made in either of these deeds. The record title to all of these water rights at the time of the execution of these deeds was in the Horse Creek Land & Cattle Company, by the filing of claims of water rights as upon original appropriation on the first day of September, A. D. 1886. By deed of date April twentieth, 1887, stating the consideration of one dollar, the Horse Creek Land & Cattle Company conveyed all these water rights and ditches to the Cheyenne Land & Live Stock Company.

The trial court finds, and these findings are supported by the evidence, that all of these ditches and water rights have been used for the irrigation of portions of the land described in the trust deed in question, or upon lands acquired by the Cheyenne Land & Live Stock Company after the execution of the trust deed, or upon both, except Horse Creek Ditch No. 7. As to this ditch there is no finding. The evidence shows that the water from this ditch was used partly upon land of the Cheyenne Land & Live Stock Company, and partly upon other land the ownership of which is not shown. No other use of any of the water supplied by any of the water rights and ditches is shown or claimed.

Upon these facts the trial court finds:

"That the ditches and water appropriations were. not appurtenances to the land at the time the said trust deed was executed, nor have they nor any of them become appurtenant to any of said lands at any time since the same was executed." And further:

"That the lien of said defendant, Charles A. Badgette, under his execution and the levy thereof is prior to any right of said plaintiff herein upon the ditches and water rights levied upon by said Badgette."

Upon the question whether a right to the use of water for the purpose of irrigation, together with the necessary conduit for conducting the water to the place where it is used, is appurtenant to the land irrigated or not, the courts of the states and territories in which irrigation is practiced are not in entire harmony. But this statement of the question is too narrow

to meet the conditions of the case at bar. The discussion should not be confined to the meaning or proper use of the word appurtenant, or appurtenance. The real question is one of vastly more importance than a mere question of the proper use of words. It is, substantially, whether a right to the use of water for the irrigation of land, together with the ditch making such right available becomes in any way so attached to the land irrigated as to pass by a conveyance of the land without mentioning the water right, and to become subject to the liens and liabilities which attach to the land, and entitled to the exemptions to which the land is entitled.

The question involved is one of first impression in this state and its importance cannot be overestimated. To present the matter understandingly requires a discussion at some length of one or more representative cases from each of the states and territories in which the question in any form has been raised and decided in a court of last resort.

In the case of Bloom v. West, decided by the Colorado Court of Appeals in March, 1893, 32 Pac. Rep., 846, the parties on both sides deraigned title to both lands and water rights from the same source—Michael Bashor. By conveyance the lands of Bashor were divided and each of the parties to the suit owned a portion of it. The litigation was as to the division of the water between these parties. The trial court decreed to the owners of each portion of the land a right to the use of a portion of the water "as an appurtenance to said land." The court of appeals affirmed the decree as to the division of the water, but directed the district court to strike out of the decree that portion connecting the water with the land as an appurtenance. Both parties claiming title from the same source, and there being no adverse claimant, the land, the extent, number of acres irrigated, etc., was "regarded as data upon which an equitable division of the water could be based."

In the course of the discussion of the case the court of appeals, after citing common law authorities to the effect that a thing corporeal cannot be appurtenant to a thing corporeal, but that the appurtenance must be a thing incorporeal, says:

"And this legal fact is recognized to the present day. According to the recent legal decisions a party who owns lands, and the right to use water from an irrigating ditch or canal, has two separate and distinct rights of property, either of which could pass by assignment or conveyance regardless of the other." If this means simply that the owner of land and of a water right from which the land is irrigated may sell the water right without selling the land, it is in harmony with the decisions of other courts. But if it means that the water right would not pass by a sale and conveyance of the land without mentioning the water right, it is in conflict with all the decisions of other courts in the arid region, passing upon this question, which have been cited by counsel in the case at bar or which have otherwise fallen under our observation. The case of Strickler v. The City of Colorado Springs was decided by the Supreme Court of Colorado in April, 1891, 26 Pac. Rep., 313, and is cited as authority for the decision of the case of Bloom v. West. The decision in that case, so far as it affects the decision of the case of Bloom v. West, is simply to the effect that a water right held and used for the purpose of irrigating land may be sold and transferred separate from the land. This decision is certainly correct. The question whether a conveyance of the land not mentioning the water right would carry with the land the water right was not raised by the facts of the case, and was not, and could not have been, decided. In Bloom v. West the parties who had purchased parts of the tract of land once owned by Michael Bashor took the water right of Michael Bashor from which he derived water for the irrigation of portions of the land, by the purchase of the land without mention of the water right, and by taking possession of both land and water right, as stated in the opinion, "by common consent." The court confirmed the right of the parties to the use of the water and divided it between them equitably, taking amount of land, number of acres irrigated, etc., as a basis. This action of the learned court was eminently just, and is in harmony with the authorities as we understand them. But it is based, partly at least, upon the fact, as stated by the court,

that there was no adverse claimant to the water right, both parties claiming an interest in it from a common source, by virtue of mesne conveyances of the land from Michael Bashor. If this means that Michael Bashor himself, or any one claiming the water right under him by deed executed by him after he parted with the land, could deprive the parties of the use of the water, it is a startling proposition.

We cannot ignore as judges what we know as men of the general condition of the country. As residents of the arid region, interested in its business conditions we know, and as lawyers and judges deriving our knowledge from reported cases we know, that there are vast quantities of agricultural land cultivated in the arid region and made valuable by the use of water the right to which depends upon a conveyance of the land without mentioning water, water right or irrigating ditch. Land and water together are of great value. The value of the land without the use of the water is trivial. And the conditions are such in many instances that if the owner of the land is deprived of the use of the water to which he has been accustomed he cannot procure other water. In other instances it can be done only at great expense.

As we have already said, the decision in the case of Strickler v. The City of Colorado Springs, and in the case of Bloom v. West, upon the interests involved in each case, were eminently just and equitable, in harmony with the authorities as we understand them, and their correctness is unquestionable. It is only dicta of the latter case, tending to establish a doctrine dangerous, as we conceive, to great property interests heretofore considered secure, that is questionable.

In the case of Bloom v. West, the court does not say that a water right is a thing corporeal, but treats it as such. Its argument seems to be, in short, a thing corporeal can not be appurtenant to land. A water right is a thing corporeal. Therefore a water right cannot be appurtenant to land.

The flow of water in a stream was at common law considered part and parcel of the realty, and a corporeal thing, and part of the property of the riparian proprietor. But the right to take water from the land of another, and conduct it by pipes

or other conduit to another place and to use it there, was always considered as an incorporeal hereditament, and as an easement appurtenant to the estate upon which the water was used, when the right was created in favor of a particular estate. But the right might be an easement in gross belonging to an individual person, who could, in that case, use the water where he chose, and might change the place of its use. Washburne on Easements, Third Edition, pp. 11, 12, 276 and 277, with numerous authorities cited. And where the right to take and use water was an easement appurtenant to an estate, both the water right and the conduit for the water would pass by a deed of the estate. Wood's Law of Nuisances, 2nd Ed., Sec. 410. And a water right in this country is an incorporeal hereditament. Pom. Wat. Right, Sec. 97. But a thing corporeal at common law might become attached to another thing corporeal, not indeed technically as an appurtenance, though the distinction is very fine, but so as to pass by deed of the principal thing. "In Archer v. Bennett there was a mill, and a kiln designed for the use of the mill, but separate buildings. A grant of the mill with the appurtenances was made, and the question was if the kiln passed. It was held that the kiln did not pass as an appurtenant to the mill, being in itself land. But if it was necessary to the use and enjoyment of the mill it passed as part of the mill, 'as by grant of a messuage the conduits and water-pipes pass as parcel though remote.' " Land necessary and used for the lumber yard of a saw-mill would pass by a deed of the mill. The water right, dam and mill-race, necessary for the operation of a mill run by water power, would pass by a deed of the mill. Also a sluice-way for carrying off the water if that was necessary. Now, there is no question that the kiln might be sold separate from the mill, and the mill, or what was left of it, sold to another purchaser without the kiln. The land used for the lumber yard of a saw-mill might be sold separate from the mill, and the mill itself sold to another purchaser who might use the mill for some other purpose, or procure another lumber-yard. The water right and dam necessary to the running of a mill run by water power

might be sold separate from the mill, and the power might be used for another purpose.

Whoever grants a thing grants by implication that which is necessary to the beneficial use and enjoyment of the thing granted. To take away the water right by which agricultural land is irrigated in the arid region leaves the land more nearly useless and valueless than a mill without a kiln, or a saw-mill without a lumber-yard, or a water-mill without a dam. The water-mill may be moved and used elsewhere. The land cannot be. Another kiln or lumber-yard might be provided at comparatively small expense. In most of the arid region water rights furnishing sufficient water for the irrigation of farms have become quite valuable, and difficult to obtain in many localities at any reasonable expense.

The pipes used to conduct water to a dwelling house would pass at common-law by a conveyance of the house, because necessary to the use and enjoyment of the house in the usual manner, though they extend far beyond the premises granted, and might be replaced at small expense. The water right also passes. Whatever is necessary to the beneficial use and enjoyment of the thing granted, whether corporeal or incorporeal, passes at common law as incident or "quasi appendant," to the thing granted; but we must not call them appurtenances if they are corporeal things. They then pass as part and parcel of the grant.

This doctrine of the common law has been very generally, if not universally, approved in the United States. The extent to which it has been carried is well illustrated by the case of Donnell v. Humphreys, 1 Mont., 518. In that case there was a grant of ditches described in the conveyance as "the ditches known as the Silver Bow Ditch Company's ditches, said ditches carrying water from Silver Bow Creek to Butte City and the placer mines in that vicinity, and more particularly known as the Humphreys and Allison ditches." There were two ditches known as the upper and lower ditches which were known as the Silver Bow Ditch Company's ditches, and which carried water from Silver Bow Creek to Butte City and the placer mines in that vicinity, and which were

more particularly known as the Humphreys and Allison ditches. As to these ditches there was no controversy. But there was a ditch known as the Park ditch, which conveyed water from a branch of Boulder Creek to Silver Bow Creek at a point on the stream above the heads of the upper and lower ditches which carried water from Silver Bow Creek to Butte City and vicinity. The grantees, the plaintiffs in the action, offered evidence to prove that the Park ditch was a feeder of the upper and lower ditches, and that the three were known as the Silver Bow Creek Ditch Company ditches and more particularly known as the Humphreys and Allison ditches. This evidence, with some other evidence tending to establish plaintiffs' claim to the Park Ditch, was rejected by the district court on the trial of the case. The Supreme Court held by a majority of its members, one judge dissenting, that this evidence should be received, and that if plaintiffs could prove that the Park Ditch furnished the water carried by the Upper and Lower ditches, and that those ditches without the Park ditch, would be useless and valueless, then the plaintiff would take the Park ditch, not as appurtenant to the upper and lower ditch, but as necessary to their beneficial use and as part and parcel of the grant.

So far, in this decision, the writer of this opinion has purposely avoided any discussion of the meaning and proper use of the word appurtenant or appurtenance. And it seems that this and similar cases might be decided upon principles already discussed without any reference to either of these words. But the words constantly occur in the reports of cases arising in the arid region and involving water rights, and will be found continually occurring in the recent cases from which we must derive our principal assistance in endeavoring to arrive at a correct solution of the questions presented in the case at bar. It is important that we ascertain if we can, whether the authorities applicable and to which we must of necessity resort, use these important words correctly or not. This is a consideration very materially affecting the weight of such decisions as authority. So far as we are at present advised no court has said that water rights may not be appur-

tenant to land. But such appears to be the opinion of the Colorado court of appeals from its decision of the case of. Bloom v. West, supra. At common law they might be, and, quite generally were, so appurtenant, excepting the rights of riparian proprietors to water as part and parcel of their land. The doctrine of the Colorado court of appeals seems to be that a water right cannot be appurtenant to the land upon which the water is used, because the water right is if not a corporeal thing, at least a separate and distinct property right, which may pass by assignment or conveyance regardless of the land. The conclusion does not seem necessarily to follow from the premise. A water right appurtenant to land as an easement at common law always was a separate and distinct property right which might pass by assignment or conveyance regardless of the land. It is true the authority of the owner of the dominant estate, to which a water right was appurtenant, to sell and convey, the water right separate from the land was limited. But he might sell and convey it separate from the land to the owner of the servient estate. Or he and the owner of the servient estate together might sell and convey it to any one else. Appurtenant does not mean and never meant inseparable. Suppose under the common law A to be the owner of land containing several rivulets. Suppose B to be the owner of adjoining land, and that he receives by grant from A the right to divert and conduct to his own land and use on that land, the water from one of these rivulets, and does so. Here B's water right is a property right separate and distinct in its origin from his property right in his land. But by common law it has become an easement appurtenant to that land. Suppose further that B afterwards finds that he does not need the water, and desires to sell the water right. A will not purchase it because he has abundance of water without it and would prefer to have the water diverted from his land. But C has land on the opposite side of B's land from A's, and wants the water. What is to prevent B, with the consent and co-operation of A, from selling to C the water right, together with the right of way for a conduit for the water across his own land? Here the water right is not only

a property right separate and distinct in its origin from the property right of B in the land to which it became appurtenant, but it has been sold and conveyed as a separate and distinct property right, apart from the land.   And the easement of a water right at common law was a more absolute property right in the owner of the estate to which the water right was appurtenant as an easement than in any water right under our system.   The easement at common law was not forfeited by non-user unless there was also adverse user by the owner of the servient estate for a length of time sufficient to create a prescriptive right.   Washburne on Easements, pp. 670-671.

No such rule applies under our system.   Non-user for a much shorter time is an abandonment of the right.

It is further to be observed that the limitation above referred to of the right at common law of the owner of an estate to sell an easement appurtenant to his own estate separate from the estate was sustained merely from a consideration of the rights of the owner of the servient estate.   It was not because the easement was not a property right, nor because it was inseparable from the estate to which it was appurtenant.   But these easements lay in grant, and the owner of the servient estate having granted an easement for the benefit of any other estate, the terms of the grant could not be changed by any one except himself or those succeeding to his rights.

Under our system there arises no question of servient and dominant estates.   Water rights are obtained by appropriation and use for a beneficial purpose from the public waters of the United States or this State, under statutes authorizing such appropriation.   By such appropriation the appropriator acquires not an absolute ownership in the water itself, but a right to its use which is considered as property and may be sold and conveyed as such.   Strickler v. City of Colorado Springs, 26 Pac., 313, and authorities there cited.   And there is no servient estate in question in such matter.

But so far as we are at present advised the case of Bloom v. West, supra, is the only authority for the proposition that a water right is a corporeal thing, or the further proposition that a water right may not become appurtenant to land.   We

34

will not attempt to exhaust the authorities to the contrary, but will cite a few cases, mostly recent, showing the prevailing views of the courts in the states of the arid region.

In the case of Cave v. Crafts, 53 Cal., 135, certain parties had purchased lands and received a conveyance which was silent as to water rights, and did not contain the word appurtenances. At the time of the purchase the lands were irrigated and had been for a long time prior thereto. The court says: "The use of the waters to the extent, at least, to which they had been previously employed, may have been, and, it is fair to presume was, the chief, perhaps the only inducement to the purchase by the plaintiffs and their grantors. To authorize, judicially, a diversion and material reduction of the waters, would be a violation of the principle that they took with all the apparent benefits and easements belonging to their purchase." * * *

"The word 'appurtenances' is not necessary to the conveyance of the easement. The general rule of law is that when a party grants a thing he by implication grants whatever is incident to it and necessary to its beneficial enjoyments."

The case of Farmer v. Ukiah Water Co., 56 Cal., 11, arose upon the facts following: One Lamar was the owner of a house and about four acres of land upon which he used water acquired by purchase of a certain water right from defendant. He sold the house and land with the appurtenances, not mentioning water or water right. He afterwards sold, or attempted to sell, the water right. Held, that the water right passed by the sale and conveyance of the house and land.

The recent case of Cyne v. Benicia Water Co., 34 Pac. Rep., 714, decided Nov. 10, 1893, is to the same effect. Eliza D. Nichols owned a house and lands upon Paddy Ranch Creek. On July 5, 1883, she mortgaged the land. On November 5, 1883, by contract with the defendant company, she gave up her right to the flow of water in Paddy Ranch Creek, and procured from said defendant a water right for domestic use and the irrigation of a portion of the land. On April 20, 1889, the land was sold under foreclosure of the mortgage to plaintiff. Afterwards the company denied the plaintiff's

right to the water and refused to furnish it. The amount of water was what would flow through a one-inch tap placed in the company's main pipe. The court says: "The water was used on the Nichols ranch for more than five years. We must presume that such an amount of water was conducted to the ranch in some kind of a channel or pipe. Whichever it was it would constitute an appurtenance to the Nichols ranch, and the right to it, including the flow of water from the main, passed under the conveyance to plaintiff."

In Montana it was held that where parties, having a possessory right only to land, "conveyed their possession of the land with its appurtenances, they also conveyed their interest in the ditch and water right, which was necessary to the use, cultivation and enjoyment of the land, just as certainly and as fully as if they had described it in express terms in the deed itself." Tucker v. Jones, 8 Mont. Rep., 225.

The same view is held in Washington, even where the purchase was of possessory rights only and was not by deed. Geddis v. Parrish, 1 Wash, Rep., 587.

And in Oregon, where the water right is considered as part of the improvements. Hindman v. Rizor, 27 Pac., 13. And as an appurtenance to the land. Coventon v. Seufert, 32 Pac. (Ore.), 508.

Thus it seems that the doctrine is very general in the states of the arid region that a water right becomes appurtenant to the land upon which the water is used, and the ditch, water-pipe, or other conduit for the water, becomes attached to the land either as appurtenant, or incident to the land and necessary to its beneficial enjoyment, and therefore becomes part and parcel of the realty.

We have seen that the doctrine of the common law is substantially the same, and really there appears to be vastly more weighty reasons, under conditions existing in this region, for holding that a water right is appurtenant to the land upon which the water is used than under conditions existing where the rules of the common law were developed. The disastrous results of separating the land and water are immensely greater here. And from considerations strictly legal and technical

the water rights seem to be more thoroughly appurtenant to the land here than there. At common law the easement of a ,water right was not lost by non-user, and it might be an easement in gross not connected with land or any particular beneficial use. Under our system there is no such thing as a water right in gross. The application of the water to some beneficial purpose is absolutely requisite. And a water right for purposes of irrigation can no more exist where there is no land to be irrigated than can an easement for the passage of light to ancient windows exist where there never were any windows. And this would seem to be of the very essence of appurtenances. Where one thing depends upon another for its existence it would seem entirely proper to call it appurtenant to that thing upon which it so depends.

It was assumed in argument on behalf of defendant Badgette that the mortgagor in possession might transfer the water rights separate from the mortgaged lands upon which the water was used, and that this power in the Cheyenne Land & Live Stock Company as mortgagor in possession is inconsistent with the doctrine that the water rights were appurtenant to the lands upon which the water was used. The conclusion might legitimately follow if the assumed premise were true. But it is not. A mortgagor in possession, like a tenant for life or for years, may not commit waste, and may be restrained by injunction if he attempts it. Waste is anything that damages the inheritance in the one case, or materially impairs the security in the other. There are few things which are adapted to accomplish both of these results to so great an extent as the deprivation of agricultural land in the arid region of the water necessary for its irrigation. It is true that by all the authorities the water right is separable from the land to which it is appurtenant, and may be sold separate from the land, and the place of diversion and place of use may be changed. But this is only when these acts are not injurious to the rights of others. Kidd v. Laird, 15 Cal., 152; Strickler v. City of Colorado Springs, 26 Pac., 313.

· The water rights used upon the lands acquired by the Cheyenne Land & Live Stock Company after the execution of its

trust deed became subject to the lien of the deed to the same extent as the land.   The appurtenance is subject to the same conditions as the principal thing, subject to its liabilities and entitled to its exemptions.   This is illustrated by the case of Clyne v. the Bencia Water Co., supra.   The water right in controversy in that case was acquired after the execution of a mortgage on the land where the water was applied.   But the water right became subject to the mortgage and passed by sale of the land on foreclosure of the mortgage.   Fitzell v. Leaky, 27 Cal., 477, was an action to enjoin the defendant as sheriff from selling on execution plaintiff's interest in a water right and irrigating ditch.   The judgment on which the execution issued was obtained against the plaintiff in a former action by his co-owner in the ditch for a portion of the expense of constructing the same for which he was liable but which he had failed to pay.   During the pendency of the former action after the findings in that action had been filed but before the entry of the judgment, the plaintiff in the case cited who was defendant in the former action, filed a homestead claim upon the land in his possession upon which his share of the water was used.   It was held that the interest of the plaintiff in the ditch and water was appurtenant to and part of his homestead and as such exempt from sale by virtue of the execution.

The case at bar seemed at first blush to be not free from difficulty, presenting some questions of very grave importance, and questions of first impression in Wyoming

But the apparent difficulties vanish on being approached. There is no difficulty in holding that the lien of the trust deed in question attached to the lands acquired by the grantor in the trust deed, after the execution of the deed, and to all the interest of said grantor in all of the water rights in controversy, and that such lien has precedence of the judgment and execution lien of Elise Frank and of the judgment and execution lien of Charles A. Badgette.   The authorities admit of no other conclusion.

The decree of the district court will be modified accordingly, and the case will be remanded with directions to the district court to so modify its decree.

GROESBECK, C. J., and BLAKE, Dist. J., concur.

---

### ON RE-HEARING.

CONAWAY, JUSTICE.

It is urged that the defectively executed trust deed held by the trial court and by this court to be an equitable mortgage, became such only when declared to be so by the judgment of the trial court. We are of the opinion that such is not the law. The court did not make an equitable mortgage by its decree, but found one already existing, which it foreclosed.

Much has been said as to possible fraud. There is no scintilla of evidence tending to show fraud.

The defectively executed trust deed has been spoken of as a promise to execute a trust deed, or mortgage. It is more. It is an attempt to execute a legal trust deed, and the actual execution of an equitable mortgage.

It is urged that an equitable mortgage does not take effect on after acquired property. Why not is not apparent. It would seem it should take effect, if at all, according to its terms, so far as these terms are lawful and valid.

*Rehearing denied.*

GROESBECK, C. J., and BLAKE, Dist. J., concur.