422 F.2d 137
 73 L.R.R.M. (BNA) 2664
 JOHNSON BUILDERS, INC., Plaintiff-Appellant,
v.
UNITED BROTHERHOOD OF CARPENTERS AND JOINERS, LOCAL UNION
NO. 1095, AFL-CIO, et al., Defendants-Appellees.
JOHNSON BUILDERS, INC., Plaintiff-Appellant,
v.
BRICKLAYERS, MASONS AND PLASTERERS INTERNATIONAL UNION OF
AMERICA, LOCAL 14, AFL-CIO, et al., Defendants-Appellees.
JOHNSON BUILDERS, INC., Plaintiff-Appellant,
v.
CONSTRUCTION & GENERAL LABORERS, LOCAL UNION NO. 685,
AFL-CIO, et al., Defendants-Appellees.
 Nos. 250-69, 471-69, 472-69.
 United States Court of Appeals, Tenth Circuit.
 March 3, 1970.
 
 William G. Haynes, Topeka, Kan. (Lillard, Eidson, Lewis & Porter, Topeka, Kan., on the brief), for appellant.
 James L. Rose, Topeka, Kan. (George E. McCullough, W. L. Parker, Jr., Robert B. Wareheim, and Reginald LaBunker, Topeka, Kan., on the brief), for appellees.
 Before BREITENSTEIN and HOLLOWAY, Circuit Judges, and CHRISTENSEN, District Judge.
 BREITENSTEIN, Circuit Judge.
 
 
 1
 Plaintiff-appellant, Johnson Builders, Inc., filed three separate actions in Kansas state court, one against United Brotherhood of Carpenters and Joiners, Local Union No. 1095, AFL-CIO (Carpenters), the second against Bricklayers, Masons and Plasterers International Union of America, Local 14, AFL-CIO (Bricklayers), and the third against Construction & General Laborers, Local Union No. 685, AFL-CIO (Laborers). Each asserted vilations of a collective bargaining agreement and sought injunctive relief, damages, and specific performance. Each was removed to the United States District Court for the District of Kansas on the ground that it had jurisdiction under 301 of the Labor Management Relations Act, 29 U.S.C. 185. Motions to remand were denied. After trial to the court, judgments were entered in favor of the defendants and the plaintiff appeals.
 
 
 2
 A procedural matter should first be mentioned. In the district court there were three separate and distinct actions. They were heard as one without any order of consolidation. The appeals have been presented on a joint record and joint briefs. The practice has become all too common. See e.g. In re Cummings, 10 Cir., 413 F.2d 1281, and Lonnquist v. J. C. Penney Company, 10 Cir., 421 F.2d 597. We suggest that in the interest of orderly procedure consolidation should precede joint consideration of the cases on the merits. Otherwise, we may be confounded with issues which are superficially similar but are asserted to be basically distinguishable. In the cases before us, no significant differences appear and all parties have acquiesced in the procedure followed. We will accept the pattern but in so doing we note our disapproval. If a district court is to try and to decide separate and distinct actions as one, an appropriate order of consolidation should be made.
 
 
 3
 Johnson Builders (the Company) was the prime contractor on two construction projects in Salina, Kansas, one the City-County Building and the other the Pepsi-Cola warehouse. As a member of the Salina Builders Association the Company was a party to collective bargaining contracts between the Association and the three Unions involved here. The contracts provided that there would be neither work stoppages nor lockouts and that disputes would be handled through grievance procedures culminating in binding arbitration.[1]
 
 
 4
 On August 15, 1968, a stranger union, the Hoisting Engineers, set up pickets at the City-County project. The carpenters, bricklayers, and laborers refused to cross the picket line and stopped work. The project was shut down until November 1, when the picket line was discontinued after a decision by the National Labor Relations Board that it was an unfair labor practice. The men then returned to work.
 
 
 5
 Another stranger union, the Teamsters, set up a picket line at the City-County site on November 8. Again the work came to a stop. On the same day the Company wrote each of the three Unions covered by its contracts and demanded that they get the men back to work. On November 12 the Company brought suit against the Carpenters in state court and on the following day filed similar actions against the Bricklayers and Laborers. Each suit sought an injunction, specific performance of the no-strike agreement, and damages. The state court issued temporary restraining orders requiring compliance with the contracts.
 
 
 6
 After removal, the Unions moved for an injunction against further proceedings in the Kansas court and the Company moved to remand that part of the action which pertained to the claim for an injunction against the Unions' violation of the Right-To-Work Amendment to the Kansas Constitution. Kan.Const. Art. 15, 12. The federal court denied the remand and granted the injunction staying the state proceedings.
 
 
 7
 The inclusion in a collective bargaining contract of a provision for arbitration is a 'major factor in achieving industrial peace.' United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 578, 80 S.Ct. 1347, 1350, 4 L.Ed.2d 1409. When by the terms of a pertinent collective bargaining contract a claimed breach of contract creates an arbitrable dispute, the parties must submit that dispute to an arbitrator rather than to a court. Legal action may be brought under 301 to compel an unwilling party to arbitrate, Textile Workers Union of America v. Lincoln Mills of Alabama, 353 U.S. 448, 458, 77 S.Ct. 912, 1 L.Ed.2d 972, or to require specific performance of an arbitration award, United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424. When a party claims that it is not contractually bound to arbitrate a dispute and may therefore sue directly under 301, the issue of arbitrability is to be determined by the courts because no party has to arbitrate a dispute unless it has consented thereto. Atkinson v. Sinclair Refining Co., 370 U.S. 238, 241, 82 S.Ct. 1318, 8 L.Ed.2d 462, and International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW) and its Amalgamated Local Union 256 v. Folding Carrier Corporation, 10 Cir., 422 F.2d 47.
 
 
 8
 The first problem is whether we have an arbitrable dispute. Any uncertainties in this regard are to be resolved in favor of arbitration. United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-583, 80 S.Ct. 1347, 14 L.Ed.2d 1409; see also Brotherhood of Locomotive Firemen and Enginemen, Lodge 844 v. Kennecott Copper Corporation, 10 Cir., 338 F.2d 224, 226. We believe that the answer is controlled by Drake Bakeries Incorporated v. Local 50, American Bakery & Confectionary Workers International, AFL-CIO, 370 U.S. 254, 82 S.Ct. 1346, 8 L.Ed.2d 474. In that case an employer sued a union for damages under 301 because of a work stoppage claimed to violate a no-strike agreement. At the union's request, the district court stayed the action pending completion of arbitration. The Supreme Court affirmed. The Court pointed to the broad language of the arbitration clause and concluded that a dispute existed over contract terms because the union denied that a strike had occurred and that it had caused a strike. Accordingly, arbitration was the employer's proper recourse.
 
 
 9
 The contracts before us contain similarly broad language. They provide, with no exceptions, that 'all grievances and disputes' are to be handled through a grievance procedure which culminates in binding arbitration. As the Court noted in Drake Bakeries, if the parties intended to exclude breaches of the no-strike agreement from arbitration, they could easily have so provided in the collective bargaining agreements.
 
 
 10
 The Company argues that the arbitration provision is the consideration for the no-strike clause and that a breach of the latter is so fundamental that it relieves the Company of any duty to arbitrate. In Drake Bakeries it is said that arbitration provisions which have not been repudiated are meant to survive breaches of other parts of the contract and that repudiation is to be determined by the facts. Ibid at 262, 82 S.Ct. 1346. In that case the Court found no repudiation.
 
 
 11
 The apparent purpose of the work stoppages was to show sympathy for the stranger unions. When the work stoppages began, there was no dispute which could have been the subject of arbitration. During the work stoppages, some of the employees previously working on the City-County Building worked at the Company's Pepsi-Cola project. The precise number of employees engaged in the work stoppages is uncertain. The only Company official who testified was unable to identify fully which of the employees belonged to a union, and he recognized but a few of the names. The record does not reveal how many employees were union members or the union to which they belonged, and contains no evidence of participation by the defendant Unions in the work stoppages.
 
 
 12
 In our opinion the facts show no repudiation of the arbitration agreement. Instead of being the product of a dispute, the work stoppages created one. The creation of a dispute does not repudiate the arbitration provisions. The trial court correctly dismissed the actions because of the failure of the Company to comply with the arbitration provisions of the contracts. Any intimations by the trial court on the merits were superfluous and without binding effect.
 
 
 13
 The Company urges us to decide whether, on removal, a federal court is compelled to dissolve a state court restraining order or whether such dissolution is within its equity jurisdiction. The Supreme Court has expressly reserved decision on this question. Avco Corp. v. Aero Lodge No. 735, International Association of Machinists & Aerospace Workers, 390 U.S. 557, 561, n. 4, 88 S.Ct. 1235, 20 L.Ed.2d 126. Our decision that the dispute was arbitrable makes consideration of the question unnecessary. It would have been improper in the circumstances presented for the court to have continued the state court restraining order. In any event the federal court took no action and the restraining order expired in accordance with the state law. See Kan.St.Ann. 60-904(a).
 
 
 14
 Finally, the Company says that the federal court should have remanded to the state court that part of the action which related to an alleged violation of the right-to-work provisions of the Kansas Constitution. See Kan.Const. Art. 15, 12. Section 1441(c), Title 28 U.S.C., provides that when a removable, separate and independent claim is joined with a nonremovable claim, the federal court may in its discretion remand all matters not otherwise within its original jurisdiction. The Company's claim that the Unions had breached the no-strike agreement was removable. Avco Corp., supra, 390 U.S. 557, 560, 88 S.Ct. 1235, 20 L.Ed.2d 126. The remand of the separate claim was discretionary. The refusal to make the remand was not an abuse of discretion.
 
 
 15
 Affirmed.
 
 
 
 [1]
 The Carpenters contract provided: 'This agreement is a guaranty that there will be neither suspension of work or lockout, and that all grievances and disputes between the Contractors and the Union or between different crafts on the work, will be handled as herein provided (grievance procedure and binding arbitration).' With an insignificant exception the contracts with the Bricklayers and Laborers read: 'This Agreement is a guarantee that there will be neither suspension of work or lockout, and that all grievances and disputes to be handled as set forth herein between the Contractors and the Union or between different crafts on the work, will be handled as hereinafter provided. The Union agrees that during the term of this agreement it will not cause, authorize, permit or take part in any strike, slowdown, sitdown, picketing, cessation of work or acts affecting progress of work done or rather being done, and the Contractors agree that during the term of this agreement they will not suspend work or lockout their employees.' The grievance procedure culminates in binding arbitration