BARD RANCH, INC., Appellant,

v.

Wayne A. WEBER and Evelyn S. Weber,
Appellees.

In the Matter of the FINAL PROOFS OF
APPROPRIATION OF the Following WA-
TER RIGHTS: Permit No. 22864, Weber
No. I Ditch; Permit No. 22865, Weber No.
2 Ditch; Permit No. 6266 ENL., Wayne
ENL. Weber No. 2 Ditch; Permit No. 6267
ENL., Second ENL. Weber No. 2 Ditch;

In the Matter of the Amended Petition to
Change the Appropriation Under the Weber
No. 2 Ditch, Permit No. 22865, Priority
of March 5, 1968, From Supplemental Sup-
ply to Original Supply;

In the Matter of the Petition for Partial
Change in Means of Conveyance From
Weber No. 2 Ditch, Permit No. 22865, Pri-
ority March 5, 1968, Diverting From Chug-
water Creek to the Cooley Ditch From the
Same Source of Supply.

Wayne A. WEBER and Evelyn S. Weber,
Appellants (Contestees-Appel-
lants below),

v.

H. F. KETELSEN and Frances S. Ketelsen,
Appellees (Petitioners-Appellees below).

Nos. 4400, 4401, 4403.

Supreme Court of Wyoming.

June 30, 1975.

William R. Jones, Jones, Jones, Vines & Hunkins, Wheatland, for appellant, Bard Ranch, Inc. and appellees H. F. Ketelsen and Frances S. Ketelsen.

Jack R. Gage, Hanes, Carmichael, Johnson, Gage & Speight, Cheyenne, for Wayne A. Weber and Evelyn S. Weber (appellants in Case No. 4403, and appellees in Case Nos. 4400 and 4401).

Before McEWAN,* C. J., GUTHRIE, McCLINTOCK, THOMAS, JJ., and ARMSTRONG, D. J., Retired.

THOMAS, Justice.

How long is the Cooley Ditch? Who owns the Cooley Ditch? Who is entitled to use the Cooley Ditch? What water appropriations can be conveyed through the Cooley Ditch? Who is responsible for the expense of maintenance and repair of the Cooley Ditch?

These are the questions posed by these three cases which are the product of disagreements between neighbors over the operation of a private irrigation system located approximately five miles east of Wheatland, in Platte County, Wyoming. The Cooley Ditch was initially constructed in 1914, according to a Proof of Appropriation of Water filed with the State Engineer on October 19, 1936, as an integral part of the irrigation system through which water is diverted from Chugwater Creek for various water appropriations, either adjudicated in favor of the parties or held in a permit status by the parties. This stretch of Chugwater Creek flows in generally a northeasterly direction, and the several ditches which compose the irrigation system also flow to the north and east out of Chugwater Creek.

We have concluded that the Cooley Ditch begins at its headgate located on Chugwater Creek, the site of which is legally described as South 85° 10′ East, 700

ft. distance, from the South Quarter Corner of Section 20, Township 24 North, Range 67 West, 6th P.M., and which is located in the Northwest Quarter of the Northeast Quarter of Section 29, T. 24 N., R. 67 W. It ends at the point in the Northeast Quarter of the Southwest Quarter of Section 21, T. 24 N., R. 67 W., where in the year 1920 it entered an existing ditch known as the Enlargement of the Chugwater Ditch No. 1. It is jointly owned by the parties in these cases. Both parties are entitled to use the Cooley Ditch.

The District Court held that Bard Ranch, Inc., is entitled to use the Cooley Ditch for the conveyance of water for water rights aggregating 2.76 c. f. s. This finding appears to be premised upon a combination of contractual rights and historic permission. The District Court further held that in accordance with the provisions of §§ 41–181 through 41–188, W.S. 1957, Bard Ranch, Inc., would be entitled to convey as much as 5.52 c. f. s. through the Cooley Ditch. Bard Ranch, Inc.'s rights to convey water must be the object of further consideration by the District Court. Accepting arguendo the rights of Bard Ranch, Inc., as defined by the District Court, and recognizing that the capacity of the Cooley Ditch is 45.2 c. f. s., the interest of the Webers then would be the balance of that capacity, or 39.68 c. f. s., which they would be entitled to use for the conveyance of water assuming that they are able to secure appropriations of water in such amounts.[1]

---

* Now Judge of the Fourth Judicial District.

1. Specifically, Bard Ranch, Inc., according to the District Court can use the Cooley Ditch as a means of conveyance for the following:

1) Permit No. 1186 Enl. for 1.01 c. f. s., with a priority date of April 6, 1904.

2) Permit No. 4204 Enl. for 1.35 c. f. s., with a priority date of April 18, 1921.

3) Permit No. 1186 Enl. for 0.18 c. f. s., with a priority date of April 6, 1904.

4) Permit No. 4949 Enl. for 0.06 c. f. s., with a priority date of June 19, 1934.

5) Permit No. 4949 Enl. for 0.16 c. f. s., with a priority date of June 19, 1934.

As of this time the Webers, according to the District Court, can use the Cooley Ditch as means of conveyance for:

1) Permit No. Territorial for 0.20 c. f. s., with a priority date of February, 1885.

2) Permit No. 15740 for 1.89 c. f. s., with a priority date of March 16, 1920.

3) Permit No. 4198 Enl. for 2.63 c. f. s., with a priority date of April 30, 1921.

4) Permit No. 22864 for 1.01 c. f. s., with a priority date of March 5, 1968.

5) Permit No. 22865 for 0.94 c. f. s., with a priority date of March 5, 1968.

6) Permit No. 6266 Enl. for 0.94 c. f. s., with a priority date of July 10, 1969.

7) Permit No. 6267 Enl. for 1.40 c. f. s., with a priority date of July 25, 1969.

With respect to the responsibility for maintenance and repair of the Cooley Ditch the parties must contribute to these expenses according to a ratio determined by the number of acres owned by them and irrigated by water conveyed through the Cooley Ditch and the total number of acres irrigated by water conveyed through the Cooley Ditch.

The rationale for our answers to these questions is stated more completely in the discussion which follows. The judgment in at least one of these cases must, of necessity, be redrawn, and, in accordance with our resolution of the issues presented, the District Court will need to augment the record in some particulars and perhaps reexamine it in others.

## CASE NO. 4400

This is an appeal from the Order entered by the District Court in an action brought by Bard Ranch, Inc., in which the adjudication of ownership and use rights of the Cooley Ditch was sought. While the use of the Cooley Ditch was adjudged in favor of Bard Ranch, Inc., to the full extent sought, the ownership claims it made were essentially denied, and Bard's appeal seeks to have that determination reversed and adjusted. In part, we have done so. The parties are in accord that the result in this case influences, and perhaps substantially controls, the disposition of the other appeals.

The record discloses that in 1883 the Chugwater Ditch No. 1 was constructed, and lands in Section 5, T. 23 N., R. 67 W., 6th P.M., and in Sections 21, 28, 29, and 32, T. 24 N., R. 67 W., 6th P.M., were irrigated by water conveyed through that ditch. The course of the ditch as then constructed was from its headgate in Section 8, T. 23 N., R. 67 W., 6th P.M., across Section 5 in the same Township, and then through Sections 32, 29, 28, and into Section 21 in T. 24 N., R. 67 W., 6th P.M. In 1904 the Chugwater Ditch No. 1 was extended in a generally north-north-easterly direction to convey water to irrigate lands in Sections 10 and 15, T. 24 N., R. 67 W., 6th P.M. At this time the course of the Chugwater Ditch No. 1 as extended by the Enlargement of the Chugwater Ditch No. 1 was from its headgate in Section 8, T. 23 N., R. 67 W., 6th P.M., across Section 5 in the same Township, and then through Sections 32, 29, 28, 21, 16, 15, and into Section 10 in T. 24 N., R. 67 W., 6th P.M. Early maps manifest the existence of such a ditch in Section 21, although the particular name to be attached to that ditch is the subject of considerable confusion.

The appropriation of water which was obtained in connection with the Enlargement of the Chugwater Ditch No. 1 was for 2.18 c. f. s., and it is identified as Permit 1186 Enl. in the office of the State Engineer. This appropriation was obtained by George Milne, a predecessor in interest of Swan Land and Cattle Company, Ltd., and for purposes of this case also a predecessor in interest of Bard Ranch, Inc. The next event of significance in this case is the construction of the Cooley Ditch in 1914, as briefly described earlier. The Cooley Ditch originally was built by H. W. Meglemre, and the appropriation of water sought in the permit application in connection with which he built the Cooley Ditch was for lands in Section 16, T. 24 N., R. 67 W., 6th P.M., which, of course, is south and west of Section 10, and west of Section 15. This appropriation is identified by Permit No. 15740 in the office of the State Engineer, and it was for 1.89 c. f. s. The permit map submitted in connection with this permit application shows the Enlargement of the Chugwater Ditch No. 1 as a part of the means of conveyance for the 1.89 c. f. s. for which the appropriation was certified.

For this history to be meaningful in connection with the issues of this case it is important to bear in mind that essentially the Swan Land and Cattle Company, Ltd., was the predecessor in interest of Bard Ranch, Inc. H. W. Meglemre was the predecessor in interest of the Webers. A

complication is injected by the fact that Swan Land and Cattle Company, Ltd., at the time the Cooley Ditch was constructed, owned Section 21, T. 24 N., R. 67 W., 6th P.M., in which the Cooley Ditch and a part of the Enlargement of Chugwater Ditch No. 1 are situated. Several years after the construction of the Cooley Ditch, the Swan Land and Cattle Company, Ltd., and H. W. Meglemre, who at that time owned Section 16 in T. 24 N., R. 67 W., 6th P.M., entered into a written contract pertaining to the Cooley Ditch. This contract is dated March 12, 1920, and because of its significance in connection with these cases, it is reproduced in full, except for certain formal parts, as an appendix to this opinion.

The contract readily lends itself to the inference that it was made in settlement of potential legal questions between Meglemre, who technically was a trespasser, and Swan Land and Cattle Company, Ltd., which had a need and a desire to shorten the distance of its transportation of its water appropriation for Sections 10 and 15, T. 24 N., R. 67 W., 6th P.M. The contract also readily lends itself to the construction that in addition to the Cooley Ditch it was intended that Meglemre's right to carry water to Section 16 through the Enlargement of Chugwater Ditch No. 1 was formalized. After the execution of this contract, and in accordance with its terms, Swan Land and Cattle Company, Ltd., did obtain a change in the point of diversion for Permit No. 1186 Enl. for 2.18 c. f. s., which previously had been conveyed through the Chugwater Ditch No. 1 and the Enlargement of Chugwater Ditch No. 1, to the Cooley Ditch. At later times portions of the 2.18 c. f. s. appropriation were moved from the Cooley Ditch into other ditches, and from time to time since 1920 the parties or their predecessors in interest have used the Cooley Ditch for the conveyance of other water rights, with the current rights actually so conveyed being summarized in footnote 1 of this opinion.

In its Complaint and the Amended Complaint which superseded the Complaint, Bard Ranch, Inc., relied upon the provisions of § 41–259, W.S.1957.[2] The prayer for relief in these complaints encompassed only a part of the determination required by § 41–259 [3] since it was limited to requests that the Court declare the ownership

2. § 41–259, W.S.1957, provides as follows: "Where the ownership of any irrigation works is disputed, or jointly claimed by any person, partnership or corporation, and the several owners cannot agree upon the amount of interest owned by each, and one or more claimants of such right desire the filing of the affidavit as hereinbefore mentioned, while the other or others do not desire to join therein, one or more such claimants may bring an action in equity in the district court of any county wherein the land or parts of the land affected by such ditch or ditch right is located, and said court shall determine the right of the several claimants to such ditch or ditch right, and determine all the facts necessary in the affidavit hereinbefore prescribed, and such decree shall, after being filed and recorded in the office of the county clerk of the proper county as hereinbefore prescribed, have the same force and effect as the affidavit hereinbefore prescribed; provided, that the provisions of sections 22 [§ 41–254], 23 [§ 41–255], 24 [§ 41–256], 25 [§ 41–257], 26 [§ 41–258] and 27 [§ 41–259] of this act shall not be construed to relate

to water rights, or in any way to conflict with the laws governing the same."

3. § 41–259, W.S.1957, provides that when an action is brought pursuant to its provisions, the " * * * court shall determine the right of the several claimants to such ditch or ditch right, and determine all the facts necessary in the affidavit hereinbefore prescribed * * *." Section 41–255, W.S.1957, is the provision relating to the affidavit and it states:
"Any person, persons, partnership or association of individuals, or corporation, may file in the office of the board of control, and in the office of the county clerk of the county wherein any ditch, reservoir or other irrigation works shall be located, an affidavit, duly sworn to before an officer authorized to acknowledge deeds, or before a water superintendent of this state, joined in, signed, and sworn to by all the parties having an interest in such ditch or ditch right, or by the guardian of any such person, if insane or a minor, or in case of a corporation by any two of its officers, stat-

of the respective parties in and to the said Cooley Ditch; the adjudicated rights to be conveyed therein; the respective responsibilities for administration, utilization, maintenance, and repair thereof; and that no additional rights could be diverted into and conveyed through the Cooley Ditch. In addition, Bard Ranch, Inc., sought to have a declaration limiting the rights of the Webers in the utilization of the Enlargement of the Chugwater Ditch No. 1 beyond its point of confluence with the Cooley Ditch. The record in this case does not demonstrate that the Webers had used the Enlargement of Chugwater Ditch No. 1 for any appropriation other than Permit No. 15740 for the 1.89 c. f. s. right for Section 16, which historically had been conveyed through that ditch pursuant to the March 12, 1920 Agreement, and, consequently, the only dispute with respect to that portion of the Enlargement of Chugwater Ditch No. 1 is over whether it really should be considered a part of the Cooley Ditch.

A counterclaim was asserted in the Webers' answer which was based upon the language of the Swan Land and Cattle Company, Ltd., and H. W. Meglemre Agreement of March 12, 1920, providing that Swan Land and Cattle Company had agreed that the particular 2.18 c. f. s., which was moved into the Cooley Ditch, should be allowed to pass all headgates further up Chugwater Creek including Chugwater No. 1 headgate. The contention in the counterclaim is that this had not been done, and since there had occurred a breach of this contractual provision the court by its judgment should limit some of the claimed rights of Bard Ranch, Inc., to convey water through the Cooley Ditch.

While the pleadings of the parties raised a number of issues, they were refined, and in the Pre-Trial Order of the Court were stated as follows:

"(1) What is the territorial extent or geographical limits of the Cooley Ditch;

"(2) What is the respective ownership of the parties in said Cooley Ditch;

"(a) That, in determining the ownership of the Cooley Ditch, the Court will necessarily need to construe that certain agreement bearing date March 12, 1920 between H. W. Meglemre and the Swan Land and Cattle Company, which is recorded in the Platte County records at Page 347 of Book 27;

"(b) That in determining the ownership of the said Cooley Ditch the Court will need necessarily to construe and decide the applicability of Sections 41–252 through 41–259, Wyoming Statutes, 1957;

"(3) What specific water rights may be conveyed in the said Cooley Ditch, either wholly or in part;

"(4) What are the respective obligations of the parties hereto with respect to maintenance and repair of the Cooley Ditch;

"(5) If the Court should determine, under issue 1 above, that the Cooley Ditch terminates at its intersection with the Chugwater No. 1 Ditch or the enlargement of Chugwater No. 1 Ditch, what is the respective ownership of the parties hereto in the enlargement of the Chugwater No. 1 Ditch, and what specific water rights of the parties may be

---

ing therein the name of the ditch, the ownership of said ditch, the interest each claimant owns therein specifically, the method of securing rights of way or irrigation works and the date of such procedure and referring to the records of the office of the state engineer or board of control, or both, relative to dimensions of irrigation works, their location, and adjudicated rights to water conveyed in or stored in such works and such other information as may be deemed necessary."

A determination of the facts necessary in accordance with § 41–255 would encompass more than the relief sought by the Amended Complaint.

conveyed through the enlargement of Chugwater No. 1 Ditch;

"(6) In what specific money amount is the plaintiff indebted to the defendant, if any, for repayment of a portion of the costs of the diversion dam constructed by defendants."

### The Jurisdiction of the Court

In dealing with our differences from the District Court with respect to the resolution of these cases, we will set forth such additional facts as are material in connection with each point to be discussed. Since the construction and application of §§ 41–252 through 41–259, W.S.1957, is a threshold question, we deal with it first. The parties still disagree with respect to the power of the District Court to proceed pursuant to § 41–259, W.S.1957. Responding to the contentions of the Webers, the District Court held that the ownership of the Cooley Ditch and its right-of-way, point of diversion and headgate, and the right of use therein, were fixed and determined by the contractual agreement between the respective predecessors in interest of the parties here which had been appropriately recorded, and that the execution and recording of the contract constituted the making of a record of ditch ownership within the meaning of the Wyoming statutes. The District Court concluded that this event divested the Court of jurisdiction to make a decree determining the ownership of the parties under these statutory provisions, thereby limiting its approach to a construction of the March 12, 1920 Agreement. The Webers earnestly contend that the action of the District Court is supported by the opinions of this Court in Bamforth v. Ihmsen, 28 Wyo. 282, 204 P. 345 (1922), rehearing denied 28 Wyo. 320, 205 P. 1004 (1922). We do not glean that conclusion from the opinions in Bamforth v. Ihmsen, supra, because the decisions there, while referring to the possibility that a contract between the parties might be sufficient to establish the relative interests of the parties in a ditch, hold that an action is appropriate under § 41–259, W.S.1957, "Where the ownership of any irrigation works is disputed, or jointly claimed by any person, partnership or corporation, and the several owners cannot agree upon the amount of interest owned by each, and one or more claimants of such right desire the filing of the affidavit as hereinbefore mentioned [§ 41–255, W.S.1957], while the other or others do not desire to join therein, * * *." Bamforth v. Ihmsen, supra, then holds that in such an action the court can look to whatever evidence may be available of the ownership interests of the parties, and it is not limited to the arbitrary ratio between the water rights of each user to the total water rights adjudicated under such works, which is set forth under § 41–254 as the way the interest will be established unless a record of ownership is made. Bamforth v. Ihmsen, supra, recognizes that one of the ways of making the record of ownership is the action provided in § 41–259, W.S.1957. We reaffirm the sense of Bamforth v. Ihmsen, supra, which is to the effect that the legislature intended for the appropriate district court to have jurisdiction of an action where the ownership of any irrigation work is disputed or jointly claimed and the several owners cannot agree upon the amount of interest owned by each. A contract such as was made in this instance is not the exclusive means of acquiring ownership of irrigation works, and the legislature cannot be said to have intended that the existence of such a contract would foreclose the parties from legal remedy to clarify their rights in favor of perpetual confusion and continuing controversy.

Had this action been brought in 1921, the District Court might well have been correct in its conclusion that the ownership was fixed and determined by the March 12, 1920 Agreement, although it would not have been divested of jurisdiction under § 41–259, W.S.1957. By the year 1973, however, as the District Court recognized in the Order which was entered, too much

water had run down the ditch. It was not limited to the arbitrary divisions provided in § 41–254, or to the recorded contract, but it was entitled to make its determination based upon all of the facts and evidence before it.

We hold then, that the District Court did have jurisdiction pursuant to § 41–259, W.S.1957, to proceed to adjudicate ownership of the Cooley Ditch, based upon all of the evidence available. In making such a determination, however, the Court pursuant to the mandate of § 41–259, W.S. 1957, must determine all the facts necessary in the affidavit which could be made pursuant to § 41–255, W.S.1957. Those facts include the name of the ditch; the ownership of said ditch; the interest each claimant owns therein specifically; the method of securing rights-of-way or irrigation works and the date of such procedure and referring to the records of the office of the State Engineer or Board of Control, or both, relative to dimensions of irrigation works, their location, and adjudicated rights to water conveyed in or stored in such works, and such other information as may be deemed necessary. The Order which was entered in this case encompasses a good deal of, but not all of, this information.

### Ownership of the Cooley Ditch

Next we consider the question of ownership of the Cooley Ditch. In both the Complaint and Amended Complaint, Bard Ranch, Inc., alleged that the Cooley Ditch was jointly owned. In their Answer to the Complaint and their Answer to the Amended Complaint, the Webers admitted the allegation of joint ownership. Prior to the pre-trial conference the parties entered into a stipulation of facts. Among the facts stipulated was the fact that the parties jointly owned the Cooley Ditch, but were unable to agree as to their respective interests. Bard Ranch, Inc., here complains that the District Court erred in not recognizing the joint ownership of the Cooley Ditch as manifested by the admis-

sions in the pleadings and the stipulation of the parties which Bard contends were not contradicted by the evidence.

This Court has previously held that parties to litigation in Wyoming are bound by the admissions of their pleadings. Board of County Commissioners of County of Fremont v. State ex rel. Miller, Wyo., 369 P.2d 537 (1962); Strom v. Felton, 76 Wyo. 370, 302 P.2d 917 (1956); State ex rel. Tibbals v. District Court of Ninth Judicial Dist. in and for Fremont County, 42 Wyo. 417, 295 P. 916 (1931) and Nugent v. Powell, 4 Wyo. 173, 33 P. 23, 20 L.R.A. 199, 62 Am.St.R. 17 (1893). The pleadings were not amended pursuant to the Wyoming Rules of Civil Procedure, and evidence in contravention of the admissions of properly alleged material facts would have been subject to exclusion, and if admitted, would have been ignored by the Court because the admissions and the pleadings are conclusive. Ford Motor Company v. Arguello, Wyo., 382 P.2d 886 (concurring and dissenting opinion of Mr. Justice Gray at page 899) (1963); Nugent v. Powell, supra.

In this instance not only was the admission of fact present in the Answers which were filed, but it was reaffirmed by the stipulation of the parties. The parties are bound by the stipulation of facts just as they are bound by admissions in pleadings. Kennedy v. Kennedy, Wyo., 456 P. 2d 243 (1969); Marcante v. Hein, 51 Wyo. 389, 67 P.2d 196 (1937); Grand Rapids Furniture Co. v. Grand Hotel and Opera House Co., 11 Wyo. 128, 70 P. 838 (1902), rehearing denied 11 Wyo. 148, 72 P. 687 (1903). Since the joint ownership of the Cooley Ditch is established conclusively by these pleadings, the conclusion of the District Court that the Webers own the right-of-way for the ditch and the ditch, subject to a right of use in said ditch by Bard Ranch, Inc., is in error, and further proceedings in this case should be conducted in the light of the admitted and stipulated fact that the parties jointly own the Cooley Ditch.

### The Length of the Cooley Ditch

This brings us to the question of the length of the Cooley Ditch which is so owned. On this point the District Court held that the Cooley Ditch commenced at its point of diversion in the Northwest Quarter of the Northeast Quarter of Section 29, T. 24 N., R. 67 W., 6th P.M., in Platte County, Wyoming, and continued in a generally north and northeasterly direction to the point of intersection of the ditch right-of-way with the common boundary between Sections 15 and 16, T. 24 N., R. 67 W., 6th P.M. As stated above, we agree with Bard Ranch, Inc., that the Cooley Ditch terminated at its point of confluence with the Enlargement of the Chugwater Ditch No. 1 in the Northeast Quarter of the Southwest Quarter of Section 21, T. 24 N., R. 67 W.

It is not clear from the Order what theory the District Court applied in reaching its conclusion with respect to the length of the Cooley Ditch. In this appeal the Webers assert:

1) The language of the Meglemre and Swan Land and Cattle Company, Ltd., Agreement of March 12, 1920, as read by the Webers, supports their position and the District Court decision. In this argument the Webers emphasized that the language of the Agreement provides for a right-of-way *across* Sections 20 and 21, and that this obviously would mean to the northern boundary of Section 21. In making this argument the Webers also contrast the language of the paragraph granting a right-of-way for the Cooley Ditch with the language of the following paragraph in which Meglemre granted an interest in the Ditch sufficient to carry 2.18 c.f.s. of water, and urge that this distinction is relevant with respect to the intention of the parties.

2) Logic and the contemporaneous interpretation of the Agreement by the parties supports the Webers. In connection with this contention the Webers point out that Meglemre obviously needed to convey water clear to Section 16. They argue that it would not be sensible to assume that he was content with a right-of-way only to the confluence of the Cooley Ditch with the Enlargement of the Chugwater Ditch No. 1 because this left him no way to get his water to Section 16 pursuant to the contractual arrangement. It also is urged that this construction would have been consistent with the interests of both of the parties. With respect to the contemporaneous interpretation, the Brief calls attention to a map which was filed with the State Engineer in connection with a permit application for a water right by Swan Land and Cattle Company, Ltd., which attaches the name Cooley Ditch to the common ditch beyond the point of confluence.

3) The Webers also urge that, in the event that their position with respect to the construction of the contract is not accepted, the title to the ditch right-of-way beyond the point of confluence was conveyed by Swan Land and Cattle Company, Ltd., at the time it conveyed the title to Section 21 to a predecessor in interest of the Webers.

4) As a final contention the Webers assert that from the time the Cooley Ditch was relocated and concreted in the years 1957, 1958 and 1959, the Enlargement of the Chugwater Ditch No. 1 no longer existed and the entire ditch became the Cooley Ditch.

The Appendix, the Meglemre-Swan Land and Cattle Company, Ltd., Agreement of March 12, 1920, which is relied upon by both parties, does convey an interest in land, that is, a ditch right-of-way. 93 C.J.S. *Waters* § 129, p. 841 (1956). The Agreement must be construed in accordance with the rules of construction applicable to deeds. These require

that the instrument must be considered as a whole, and the intent of the parties gathered from the plain and unambiguous language contained therein. If, however, the intention of the grantor, in the case of a deed, does not readily appear from the instrument considered as a whole, then the language must be read in the light of the surrounding circumstances, attendant facts showing the relations of the parties, the nature and situation of the subject matter, and the apparent purpose of making the contract. Dawson v. Meike, Wyo., 508 P. 2d 15 (1973).

In construing this Agreement as a whole by reading each part in the light of other parts, the intention of the parties can be ascertained from the instrument itself. Shellhart v. Axford, Wyo., 485 P.2d 1031 (1971). The Agreement provides in part, that Swan Land and Cattle Company, Ltd., " * * * does hereby grant, transfer and convey unto the said party of the first part [H. W. Meglemre] a right-of-way across its said lands [Sections 20 and 21 in T. 24 N., R. 67 W., 6th P.M.] for said Cooley Ditch as now established and laid out as more fully shown by the map or blue print hereto attached." The attached map shows the Cooley Ditch as it was constructed in Sections 20 and 21 to a point of confluence with another ditch. The record suggests the possibility that the other ditch may have been denominated Bard Ditch instead of Enlargement of the Chugwater Ditch No. 1, but the name shown on the map would not detract from the proposition that the point of confluence is the terminal point of the Cooley Ditch. As we have pointed out earlier, records in the office of the State Engineer show a ditch running northerly through Section 21 at that point; and furthermore, in the March 12, 1920 Agreement the parties make specific reference to the Enlargement of Chugwater No. 1 Ditch, and one of the clauses in the contract, referring to the 2.18 c. f. s. water right denominated Permit No. 1186 Enl., provides it " * * · * shall be diverted from Chugwa-ter Creek at the point of diversion of Cooley Ditch and thus carried through Cooley Ditch into Enlargement of Chugwater No. 1 Ditch."

■ There is no question that the record demonstrates a good deal of confusion among not only the residents of the area, but also professional engineers, as to the name of the ditch to the north of the point of confluence, but that confusion has no relevance with respect to the intention of the parties to the March 12, 1920 Agreement. The intention of the parties as manifested in that Agreement and in the map attached thereto and incorporated therein by reference was that Swan Land and Cattle Company, Ltd., conveyed a right-of-way for the Cooley Ditch only from its headgate to its point of confluence with the other ditch which, according to the record, was in fact the Enlargement of the Chugwater No. 1 Ditch.

■ We need not further consider the contemporaneous interpretation of the March 12, 1920 Agreement by the parties since we have found their intention manifested in the instrument. Dawson v. Meike, supra. The Webers contend, however, that in any event the right-of-way for the Enlargement of Chugwater Ditch No. 1 to the border of Sections 21 and 16 was conveyed to the Webers' predecessors in interest by Swan Land and Cattle Company, Ltd., when it conveyed title to Section 21, T. 24 N., R. 67 W., 6th P.M. This theory, which would have the effect of making the Webers owners of the ditch beyond the point of confluence discussed previously, is not compatible with the system of water appropriation that has been adopted by the State of Wyoming. In Frank v. Hicks, 4 Wyo. 502, 35 P. 475 (1894), this Court said, 35 P. at 484:

"Thus it seems that the doctrine is very general, in the states of the arid region, that a water right becomes appurtenant to the land upon which the water is used, and the ditch, water pipe, or other conduit for the water becomes attached

to the land, either as appurtenant or incident to the land, and necessary to its beneficial enjoyment, and therefore becomes part and parcel of the realty."

As applied to the facts of this case, the water right for Section 16, together with whatever portion of the easements for the Cooley Ditch and the Enlargement of Chugwater Ditch No. 1 required to service it, would be conveyed with the title to Section 16, and could not be conveyed with title to Section 21 in derogation of the rights of the owner of Section 16. Cf., Weber v. Johnston Fuel Liners, Inc., Wyo., 519 P.2d 972 (1974).

■ We appreciate that the Webers' position is that the law distinguishes between a right-of-way for a ditch or the ditch itself, and the right to convey water through the ditch, but we do not find that distinction supported by either the statutes or the decisions in Bamforth v. Ihmsen, supra. It is necessary and usual in this state for water appropriations to be served by ditches, or an interest in ditches, and we can see no purpose to be served by anatomizing the interest in a ditch necessary to serve a water right into finer categories. If a person has a right to convey water through a ditch, he owns an interest in that ditch or a share of the ditch to the extent of the water right he is entitled to convey through it. Under the March 12, 1920 Agreement the Webers then would own an interest in the Enlargement of Chugwater No. 1 Ditch from the point of confluence with Cooley Ditch to Section 16 sufficient to convey their 1.89 c. f. s. water right, and the balance of the Enlargement of Chugwater Ditch No. 1 would be owned on this record, by Bard Ranch, Inc.

■ The Webers contend further, however, that in any event they own this ditch through Section 16 because it was rebuilt and concreted and relocated in 1957, 1958, and 1959. Their point is that, whatever may have been the situation previously, there was only one ditch after that period, called the Cooley Ditch, and they own it as

it crosses their land. The record in this case, however, demonstrates that the rebuilding and concreting of the Cooley Ditch was done by mutual consent of the landowners involved. Under those circumstances the mere relocation of the right-of-way would not alter the rights of the respective owners. Wallace Ranch Water Co. v. Foothill Ditch Co., 5 Cal.2d 103, 53 P.2d 929 (1935); Babcock v. Gregg, 55 Mont. 317, 178 P. 284 (1918). The new concrete ditch would be considered in the same light as the old earthen ditch, and the rights of the parties in it would be exactly the same.

### Appropriations Conveyed Through the Ditches

We have summarized in footnote 1 above the water rights which the District Court held may be conveyed through the Cooley Ditch. In making these determinations the District Court relied upon its conclusion, which we have held was erroneous, with respect to the geographic limits of the Cooley Ditch. We hold that the entire matter of the water rights which may be conveyed in the Cooley Ditch and in the Enlargement of the Chugwater Ditch No. 1 must be reappraised by the District Court in the exercise of its jurisdiction pursuant to § 41–259, W.S.1957.

■ In considering the water rights which might be conveyed by Bard Ranch, Inc., the District Court relied upon a combination of contract right and historic permissive use. It concluded that Bard Ranch, Inc., was entitled to convey 2.76 c. f. s. represented by the water rights specified in footnote 1 through the Cooley Ditch, and it went on to hold that Bard Ranch, Inc., could convey 5.52 c. f. s. because of the provisions of §§ 41–181 through 41–188, W.S.1957. Upon remand the District Court should, on the basis of the record and any further evidence, state the reason for affording the right to Bard Ranch, Inc., to convey water in the Cooley Ditch in excess of the right preserved to it by the 1920 Agreement between Swan

Land and Cattle Company, Ltd., and H. W. Meglemre. In making its determination as to the water rights which Bard Ranch, Inc., could convey through the Cooley Ditch, the Court alluded to the prior conduct of the parties and their predecessors in interest in permitting Bard Ranch Inc., and its predecessors in interest to convey additional water. Since a permission to use conceptually could be withdrawn, the District Court should identify the legal premise for fixing those rights. This could occur as a matter of further contract; it might be attributable to the application of a concept of estoppel; or even the application of the concept of prescriptive rights in such a situation would be appropriate if justified by the evidence. White v. Wheatland Irrigation District, Wyo., 413 P.2d 252 (1966).

■ With respect to the application of the provisions of §§ 41–181 through 41–188, W.S.1957, any increase of the rights of the parties to convey waters through these ditches would depend first of all upon a conclusion drawn from the record that the water to be so conveyed was available to the parties. Under the statutory scheme the right to such water would be limited to water rights granted before March 1, 1945. It further would have to be demonstrated by the record that at times there is water flowing in Chugwater Creek in excess of the water required to furnish to all existing appropriations out of Chugwater Creek the maximum amount of water for which such appropriations were granted. Assuming that the statutory qualifications were met it would seem appropriate to protect the appropriator's right to the water by recognizing an expansion of his right to convey the water to the lands where it is to be beneficially used. In this instance, in which the capacity of the ditch by far exceeds the water presently appropriated for conveyance through it, such an adjustment could be readily effected. In other instances the right to convey the water might very well assume an obligation on the part of the party wishing to

convey it to bear the expense of whatever modifications in the irrigation works might be needed in order to carry the water.

Beyond the point of confluence where the Cooley Ditch, as we have defined it, becomes the Enlargement of Chugwater Ditch No. 1, the relative ownership rights would be reversed. We have recognized the ownership by the Webers of an interest in the Enlargement of the Chugwater Ditch No. 1 from the point of confluence to their lateral headgates in Section 16, T. 24 N., R. 67 W., 6th P.M., sufficient to convey the water represented by Permit No. 15740, the 1920 water right for 1.89 c. f. s. Any right of the Webers to convey up to double that amount because of an application of §§ 41–181 through 41–188, W. S.1957, would of necessity depend upon the facts to be found by the District Court. As is true of the rights of Bard Ranch, Inc., in the Cooley Ditch, there could, depending upon the facts disclosed by the evidence, occur different legal justifications for the right of the Webers to carry more than 1.89 c. f. s. beyond the point of confluence of the Cooley Ditch with the Enlargement of the Chugwater Ditch No. 1. These relative determinations should be the subject of critical focus by the District Court upon considering this case upon remand.

*Obligations of the Parties for Maintenance and Repairs*

■ With respect to the questions of the obligations of the parties for maintenance and repair of the Cooley Ditch, which would also govern any sum the plaintiff may be indebted to the defendants for in connection with the costs of a diversion dam which had been constructed by the defendants, the provisions of the March 12, 1920 Agreement must govern. The Agreement provides that each of the parties will bear such share of repair, maintenance, operation and upkeep of the Cooley Ditch as the total number of acres which each party has appropriated from the waters of Chugwater Creek through

said Ditch shall bear ratio to the total number of acres having an appropriation through the Ditch. It similarly provides for the expense of repairs, maintenance, operation and upkeep of the Enlargement of Chugwater Ditch No. 1, from the point where the Cooley Ditch enters the same to the point in Section 16 where the headgate for the diversion of waters to Section 16 was located. The District Court made the apportionment based upon the ratio of the water conveyed through the Ditch. While the same result may be achieved, the number of acres should be the basis of this computation, and of course the ratio will be different for the Cooley Ditch and for the Enlargement of Chugwater Ditch No. 1 beyond the point of confluence with Cooley Ditch. Whether evidence will be required in order to make this computation is a matter for the District Court.

### The Weber Counterclaim

In a cross-appeal the Webers contend that the trial court should have ruled upon its counterclaim for breach of contract based upon the language in the March 12, 1920 Agreement, which provided that the parties agreed that the particular 2.18 cubic feet should be allowed to pass all headgates farther up said stream, including Chugwater No. 1 headgate, in order to be diverted at the headgate for the Cooley Ditch. The District Court noted that the counterclaim requested relief in the nature of a declaratory judgment to the effect that the Bard Ranch, Inc., may not use any of the water perfected by its predecessors in interest under this right unless that water is allowed to pass the original headgate and all intervening headgates. Its order provided that it refused to so rule for the reason that the remedy sought by the Webers is inappropriate and on the record not ripe. It noted that the parties would not be foreclosed from pursuing any appropriate remedy in the future with respect to a disagreement over compliance with this particular provision. The essence of the Webers' contention is that the potential exists for regulation of the Cooley Ditch to the end that the 1920 water right for Section 16, for which the Cooley Ditch originally was constructed, might be reduced because the water available might not be sufficient to satisfy the prior right represented by the 2.18 c. f. s. Without specifically delineating the several transfers, the record is clear, and the District Court so noted that there remains in the Cooley Ditch only 1.19 c. f. s. out of the 2.18 c. f. s. transferred to the Ditch. It seems that the District Court held, and justifiably so, that even though the record might demonstrate a default with respect to that specific provision of the March 12, 1920 Agreement, it was incumbent upon the Webers to demonstrate in some way an injury to their rights because of any such breach, and that the evidence had not established the injury.

We agree that in an instance such as this, in which permission has been granted by the Board of Control to change a point of diversion downstream on a gaining stream, subject to the proviso that there will not be any injury to the rights of other appropriators, it is incumbent upon the other appropriator to demonstrate injury to his rights by appropriate proceedings before he can seek judicial relief. This record, while it may indicate the possibility, does not demonstrate that at any time the Webers' water appropriations actually were reduced by regulation sought by Bard Ranch, Inc., based upon the change in point of diversion of the appropriation for the 2.18 c. f. s.

The judgment of the District Court then is reversed and the case is remanded to the District Court for further proceedings, including the taking of any further evidence, and for the entry of appropriate findings and an appropriate Judgment in light of this opinion.

### CASE NO. 4401

In Case No. 4401 Bard Ranch, Inc., seeks reversal of the Order of the District Court entered in an appeal taken from the

State Board of Control, which remanded the case to the Board of Control with direction that it adjudicate the water rights sought in the proceeding without any further determination of ditch ownership. The District Court stated in its Order that it had decided the question of ditch ownership in the case which is Case No. 4400 in this Court. The Order of the Board of Control, which had been appealed, dealt with certain petitions by the Webers for the granting of final proofs of appropriations of water pursuant to permits previously obtained which reflected the Cooley Ditch as a means of conveyance for the water sought to be appropriated. The Order of the State Board of Control was of the tenor and effect that the granting of the proofs of appropriation would be proper if it were not for the dispute over the ownership and use rights to the Cooley Ditch. It provided, however, that because of that dispute no action would be taken on the final proofs of appropriation, and, apparently as a condition to the taking of any action by the Board of Control, the parties were directed to furnish to the Board, as soon as possible, evidence that their dispute over the Cooley Ditch had been resolved.[4]

The primary contention of the appellant, Bard Ranch, Inc., in this case is that it was improper for the Board of Control to do what it did with respect to the petitions of the Webers for changes in the permits for the appropriation of water referred to in footnote 4 because of the lack of any right by the Webers to convey the water referred to in the permits through the Cooley Ditch. The Board of Control had suspended action on these petitions pending a determination of ditch ownership, and the trial court did require that the Board of Control act affirmatively upon the petitions. As stated earlier, the Webers own the balance of the Cooley Ditch over and above the rights of Bard Ranch, Inc., which on the record could not exceed 5.52 c. f. s. That balance is more than adequate to carry the Weber appropriations involved in this appeal. The disposition by this court of the appeal in No. 4400 establishes the right of the Webers to convey the waters represented by Permit Nos. 22864, 22865, 6266 Enl., and 6267 Enl., through the Cooley Ditch as we have defined it in our opinion. The disposition by the District Court in Case No. 4401, therefore, is affirmed.

4. The record in Case No. 4401 encompasses proceedings before the State Engineer and the Board of Control identified by their Docket Nos. as 71–09, 71–18, 71–19, 72–31, and 72–32. In Docket No. 71–09 the predecessors in interest of Bard Ranch, Inc., petitioned for a change in the point of diversion and means of conveyance of an appropriation identified as Permit No. 18501 to the Cooley Ditch. This petition was granted, subject to the caveat that the State Engineer did not hereby grant a right of way through the Cooley Ditch nor make any determination of the relative interest of the parties in the Cooley Ditch, and this determination is not a part of the appeal in No. 4401, except to the extent that the parties do rely upon the record relating to this proceeding. In Docket No. 71–18, the Webers petitioned the State Engineer for a change of certain permits issued as Supplemental Supply from Supplemental Supply to Original Supply; these permits were identified as Weber No. 1 Ditch—Permit No. 22864; Weber No. 2 Ditch—Permit No. 22865; Wayne Enl. Weber No. 2 Ditch—Permit No. 6266E; and Second Enl. Weber No. 2 Ditch

—Permit No. 6267E. In Docket No. 71–19, the Webers sought a change of the point of diversion and a change of the partial means of conveyance of Permit No. 22864 from the Weber No. 1 Ditch to the Cooley Ditch. Docket Nos. 71–18 and 71–19 were consolidated for hearing by the State Engineer, and the petitions were granted, subject to substantially the same caveat as included in Docket No. 71–09 with respect to ownership of any interest in Cooley Ditch. In Docket No. 72–31, the Webers sought a change in the point of diversion for Permit No. 22865 and a partial change in the means of conveyance for this permit to the Cooley Ditch; and in Docket No. 72–32, the Webers sought to correct land descriptions which had resulted in the denial of the proposed change sought for Permit No. 22865 in Docket No. 71–18. The State Engineer acted upon Docket Nos. 72–31 and 72–32 on the basis of the record in Docket Nos. 71–09, 71–18 and 71–19. The State Board of Control then dealt with the proceedings under its Order Record No. 19, which was entered on November 15, 1972.

## CASE NO. 4403

Case No. 4403 is an appeal from an Order from the District Court affirming an Order of the State Board of Control entered August 18, 1971. This proceeding also dealt with appropriations relating to the Cooley Ditch. The Webers had filed some petitions for abandonment of certain water rights held by the predecessors in interest of Bard Ranch, Inc., and in part, those petitions had been granted. With respect to the portion of the water rights described in the petitions for abandonment which were not declared abandoned, however, the Board of Control had approved a change in the point of diversion and means of conveyance from other sources to the Cooley Ditch. The Webers appealed this disposition by the Board of Control and by the Court. The primary contention is that no hearing was held as required by law, and for that reason the action of the Board of Control must fail. The appropriations involved in this case are covered by the Order of the District Court in what is here as Case No. 4400, and the dispute may be substantially resolved by the disposition of that case.

 This case which was argued on appeal in conjunction with the two other cases, Nos. 4400 and 4401, although separate briefs were filed in each case, does present a procedural issue which is not involved in the other cases, and which must be dealt with separately. On May 28, 1974, the appellees, H. F. Ketelsen and Frances S. Ketelsen (the predecessors in interest of Bard Ranch, Inc.) filed a Motion to Dismiss this appeal because of the failure to file a timely notice of appeal within the time prescribed by Rule 73(a), W.R.C.P. By order of this Court entered on June 21, 1974, the Motion to Dismiss was denied provided that it could be renewed at the time the appeal finally was presented on its merits. The case having been argued on its merits, and the motion, having been renewed by the appellees, although counsel indicated a desire to withdraw it at the time of oral argument, the question of whether the case properly is before this Court must be determined.

The record in this case discloses that the judgment was filed in the office of the Clerk of the District Court of the First Judicial District in and for Platte County on January 22, 1974. The Notice of Appeal was filed by the plaintiffs-appellants on February 22, 1974, which is the 31st day after the Judgment was filed. Recently in Bowman v. Worland School District, Wyo., 531 P.2d 889 (1975), this Court announced the consequence of a failure to file a Notice of Appeal within the 30-day period provided by Rule 73 of the Wyoming Rules of Civil Procedure, holding that the Court must dismiss an appeal in which the Notice of Appeal was filed on the 31st day even though the appellees had not requested dismissal. The appellants in this case apparently recognize and anticipate the effect of Bowman v. Worland School District, supra, although it had not yet been decided at the time of the appellants' Memorandum Brief in support of their Resistance to Motion to Dismiss, because they now urge upon this Court, to distinguish the instant case, the proposition that these several cases were the objects of a constructive consolidation in the trial court. The appellants contend that the effect of the constructive consolidation was that if any party in any of the cases filed a timely notice of appeal, any opposing party then could file a notice of cross-appeal within the 14-day period provided in Rule 73, W.R.C.P. In support of their contention, the appellants cite Johnson Builders, Inc. v. United Brotherhood of Carpenters and Joiners, Local Union No. 1095, AFL–CIO, 422 F.2d 137 (10th Cir. 1970); In re Cummings, 413 F.2d 1281 (10th Cir. 1969), and Kelly v. Greer, 295 F.2d 18 (3rd Cir. 1961).

The Court has considered the contentions of the appellants very carefully, and has reviewed the cases cited by appellants and other pertinent authorities. The purpose of the Court was to determine whether the peculiar facts of this case might be

considered "unique circumstances"[5] so as to take it out of the scope of the decision in Bowman v. Worland School District, supra. The Court concludes that the circumstances presented in this case must be governed by Bowman v. Worland School District, supra, and therefore, the appeal must be dismissed.

No motion to consolidate with any other case was filed in any of these three cases, and there was no order of consolidation entered. There can be no question, however, that the matters certainly were considered as being interrelated by the trial court and the parties. For example, in the trial record for Case No. 4400 there does appear a stipulation to the effect that, "The parties agree that there are two additional cases which are interrelated with this litigation in that both cases are appeals from findings of the State Board of Control." In this stipulation the parties also agree that the principals in the cases appealed from the Board of Control are the same principals as in Case No. 4400, or are their predecessors in interest, and specific reference is made to the trial court docket numbers for the other two cases. At the time of the trial in Case No. 4400 the parties entered into an oral stipulation to the effect that all of the transcripts of evidence and exhibits in the other two cases representing the appeals from the Board of Control were to be admissible without proof of foundation. As the Webers point out, the trial brief filed by Bard Ranch, Inc., in Case No. 4403 more appropriately would have been filed in Case No. 4400.

A separate judgment, however, was entered in each case. The entry of separate judgments may well be determinative that no consolidation which would have any effect on the respective notices of appeal did occur. In the judgment which was entered in the case which is No. 4400 in this Court,

the trial court did refer to both of the other cases representing the appeals from the Board of Control as companion cases and stated that it had decided those on the same date. The appellants in this case did file a notice of appeal in Case No. 4400 subsequent to the Notice of Appeal filed by Bard Ranch, Inc., to bring themselves within the provisions relating to cross-appeals found in Rule 73, W.R.C.P. That Notice of Appeal actually was filed subsequent to the Notice of Appeal in this case, and if the position of the appellants here is sound, the Notice of Appeal in No. 4400 on behalf of the same parties would have been superfluous. The rights on appeal would have been preserved with respect to all of the cases by the one Notice of Appeal.

As this Court previously has noted in State v. District Court of Second Judicial District, Sweetwater County, Wyo., 387 P. 2d 550 (1963), the word "consolidation" has different connotations. One of these, which actually is not a consolidation, but is described as such, occurs when all but one of several pending actions are stayed until the trial of the one not stayed, it being determinative as to the others; the second connotation describes the instance in which several actions are combined into one action, lose their separate identity as such, and become a single action in which a single judgment is rendered; and the third connotation describes an instance in which several actions are tried together, but retain their separate character and require the entry of separate judgments. 9 Wright and Miller, Federal Practice and Procedure, § 2382, p. 254 (1971). While both the second and third types of consolidation are contemplated by the language of Rule 42 of the Federal Rules of Civil Procedure and Rule 42 of the Wyoming Rules of Civil Procedure, it appears that historically the courts have recognized only the third style of consolidation.[6] In the absence of

---

5. Cf. Files v. City of Rockford, 440 F.2d 811 (7th Cir. 1971).

6. See, e. g., Jones v. Den Norske Amerikalinje A/S, 451 F.2d 985 (3rd Cir. 1971) ; Zdanok v.

a specific order to the contrary, the circumstances disclosed by the record in this case, if they do constitute a "constructive consolidation," could at the most represent only the third type of consolidation described. See, e. g., Minnesota v. United States Steel Corp., 44 F.R.D. 559 (D. Minn.1968). Certainly, as noted, separate judgments were entered in each case.

In the light of the judicial development of interpretations relating to this particular rule of civil procedure, it would be necessary in order to effect the merger of cases into one action that a formal motion be filed requesting that result, and a specific order effectuating such a merger be entered. See, e. g., Minnesota v. United States Steel Corp., supra. This approach would be consistent with desirable objectives of Rule 42, W.R.C.P., described in State v. District Court of the Second Judicial District, Sweetwater County, supra, and would avoid any possibility of uncertainty with respect to the application of the provisions of Rule 54, W.R.C.P., to such a consolidated case. No such certainty could possibly attach to a series of ad hoc rulings as to whether constructive consolidation to the point of merger had or had not occurred.

In accordance with the dispositions heretofore noted, Case No. 4400 is reversed and remanded to the District Court for further proceedings and the entry of Judgment in accordance with the views expressed in this opinion. The Judgment of the District Court in Case No. 4401 is affirmed, and the appeal in Case No. 4403 is dismissed.

## APPENDIX

### Miscellaneous Record, No. 27, Platte County, Wyoming

28394

AGREEMENT

H. W. MEGLEMRE
AND
SWAN LAND & CATTLE CO.

THE STATE OF WYOMING.
SS.
COUNTY OF PLATTE.

This Instrument was filed for record on the 8 day of April A.D. 1921 at 9 o'clock A.M. and is duly recorded in Book 27 on Page 347.

PAUL SHETLER
County Clerk and Ex-Official Register of Deeds By

JEAN O. HAY Deputy

AGREEMENT.

This agreement made and entered into this 12th day of March, A.D. 1920, by and between H. W. Meglemre of Wheatland, Platte County, Wyoming, party of the first part, and The Swan Land and Cattle Company, Limited, a corporation, having its principal place of business at Chugwater, Wyoming, party of the second part,

WITNESSETH: Whereas, the party of the first part has constructed and is maintaining a ditch in Sections 20 and 21 in Township 24 North

---

Glidden Company, Durkee Famous Foods Division, 327 F.2d 944 (2nd Cir. 1964), cert. denied, 377 U.S. 934, 84 S.Ct. 1338, 12 L.Ed. 2d 298 (1964) ; MacAlister v. Guterma, 263 F.2d 65 (2nd Cir. 1958) ; Prudential Insurance Company of America v. Marine National Exchange Bank, 55 F.R.D. 436 (E.D. Wis.1972) ; Abrams v. Occidental Petroleum Corporation, 44 F.R.D. 543 (S.D.N.Y.1968) ; Koenig v. Frank's Plastering Company, 227 F.Supp. 849 (D.Neb.1964), aff'd, 341 F.2d 257 (8th Cir. 1965).

of Range 67 west of the 6th P.M. in Platte County, known as Cooley Ditch, which ditch is located upon lands belonging to the party of the second part, now therefore in considerations of the premises herein contained the said party of the second part does hereby grant, transfer and convey unto the said party of the first part a right of way across its said lands for said Cooley Ditch as now established and laid out as more fully shown by the map or blue print hereto attached.

In consideration of the premises herein contained the said party of the first part does hereby give, grant and convey unto the party of the second part an interest in the said Cooley Ditch sufficient for the carrying of 2.18 cubic feet of water through said ditch to the Enlargement of the Chugwater No. 1 Ditch. At the present time the said party of the second part has a legal right to the use of 2.18 cubic feet of water through Chugwater No. 1 Enlargement, which 2.18 cubic feet is taken from Chugwater Creek at the headgate of Chugwater No. 1 ditch and is taken through Chugwater No. 1 Ditch into the Enlargement of Chugwater No. 1 Ditch, and it is agreed hereby between the parties hereto that this particular 2.18 cubic feet shall be allowed to pass all headgates further up said stream, including Chugwater No. 1 headgate, and shall be diverted from Chugwater Creek at the point of diversion of Cooley Ditch and thus carried through Cooley Ditch into Enlargement of Chugwater No. 1 Ditch.

It is mutually agreed and understood by and between the parties hereto that each of said parties will bear such share of the repair, maintenance, operation and up keep of said Cooley Ditch as the total number of acres which each party has appropriated from the waters of Chugwater Creek shall bear ratio to the total number of acres having an appropriation through said ditch, and the said parties hereto shall likewise bear the expense of repairs, maintenance, operation and upkeep of Enlargement of Chugwater No. 1 Ditch from the point where Cooley Ditch enters the same to the point in Section 16 in said Township and range where the said party of the first part has a headgate for the diversion of the water from said Enlargement to Chugwater No. 1 Ditch unto his land, in the same proportions.

Party of the first part reserves the right in said Cooley Ditch for the carrying of certain flood waters which he expects to obtain further appropriations for.

Party of the second part promises and agrees to immediately apply for a change of point of diversion for said 2.18 cubic feet of water from its present point of diversion to the point of diversion of said Cooley Ditch, and party of the first part does hereby give, grant and convey to party of the second part a full right to the use of said point of diversion, headgate and the Cooley Ditch for the carrying of said 2.18 cubic feet of water.

This agreement is declared to be binding upon the heirs, executors, administrators and assigns of the party of the first part, and on the successors and assigns of the party of the second part.

In Witness Whereof the parties hereto have hereunto and unto duplicates hereof set their hands and affixed their seals the day and year first above and hereinbefore written.

{ THE WYOMING TRUST AND
SAVINGS BANK CORPORATE SEAL }

H. W. Meglemre (Seal)
The Swan Land and Cattle
Company, Limited.
By The Wyoming Trust &
Savings Bank, Cheyenne,
Wyo.
It's Attorney in Fact
By A H MARBLE President
Attest: Harry B. Henderson
Secretary.

WITNESSES
O O NATWICK
LOUISE A SMITH

THE STATE OF WYOMING.
SS
COUNTY OF PLATTE.